R. H. MASON, Guardian, etc. v. S. B. SPURLOCK, *et als.*

1. CHANCERY PRACTICE AND PLEADING. *Who may sue where representatives refuse.* Ordinarily, the personal representatives of a decedant are alone entitled to sue for the recovery of debts due the estate, but if they, by collusion with the debtor, refuse to take the necessary steps, are insolvent, and the debt is about to be lost, the parties ultimately entitled may, in equity, proceed against both the debtor and representatives to enforce their right by the proper decree.

Authority cited: Story's Eq. Jur., §581, note 1.

2. EVIDENCE. *When record of a former suit admissible.* Where the record of a former suit is referred to in the pleadings of a subsequent proceeding, it may be read as evidence therein.

3. SAME. *Burden of proof.* In an action to recover the amount of an obligation to a deceased · obligee, the obligation itself being produced, and the condition upon which it became payable, having been performed, if the defendant relies upon the fact of payment to the obligee in his life-time, the *onus* is upon him to establish it; and while it is not clear that he might not be a competent witness for himself, to prove the loss or destruction of an alleged receipt, yet he could not be such as to any transaction with, or statement by the deceased in his life-time.

Code cited : T. & S. Code, §3813d.

4. STATUTE OF LIMITATIONS. *Presumption of payment.* The question of limitations on an obligation under seal, before private seals were abolished, depends upon the law as it stood before the adoption of the Code, and by analogy, the time excluded from computation by the amended Constitution, as to the Statute of Limitations, is also excluded in ascertaining the presumption of payment from lapse of time.

Code cited: §47.

Case cited : Gwyn v. Porter, 5 Heisk., 253.

FROM WARREN.

Appeal from the Chancery Court. B. L. TILLMAN, Chancellor.

Mason *v.* Spurlock.

W. E. B. JONES for complainant.

SAVAGE & SWAFFORD, and MURRAY & SPURLOCK for defendant.

MCFARLAND, J., delivered the opinion of the Court.

D. G. Stone died about March or April, 1857. The executors of his will, Samuel Henderson and Washington Britton, filed a bill in the Chancery Court at McMinnville, 19th September, 1859, for a settlement of his estate, which involved many matters, and transactions not important to the present case.

In his life-time, Stone was a partner with Sam Henderson and D. C. Spurlock, in a firm known as D. G. Stone & Co., which had done a large business. About the 6th of November, 1856, this firm was succeeded, or bought out by a new firm, "Spurlock, Henderson & Spurlock," Stone retiring, and S. B. Spurlock with Henderson and D. C. Spurlock constituting the new firm. The settlement of the business growing out of this partnership business, was one of the matters intended to be settled by the bill of the executors.

The cause progressed, but was not finally settled, and upon the resumption of business, after the war was again proceeded with. The Clerk and Special Commissioner, in taking an account ordered in 1868, reported that there was a large debt of $2,138, with interest from April 23, 1857, due from S. B. Spurlock individually, to the estate of D. G. Stone, which had never been paid.

S. B. Spurlock excepted to the report upon the ground (among others) that no such claim was made against him in the bill, and no such relief sought; that he was only made a party as a member of the firm of Spurlock, Henderson & Spurlock, and the matter was not in issue. The Chancellor did not finally determine the question, but again referred it for further proof, with instructions to examine S. B. Spurlock and Henderson upon interrogatories. At this stage of the proceeding, the exception of Spurlock being probably conceded to have been well taken, the present bill was filed by R. H. Mason, Clerk and Master of the Court, and receiver of the assets in the cause, and testamentary guardian of Stone's minor children, who were legatees under his will. .This bill refers to the former proceeding, and is styled an original bill, in the nature of a cross-bill, and in the nature of a bill of interpleader. It sets forth the foundation of the claim against S. B. Spurlock in favor of Stone's estate referred to above, and charges, in substance, that it was never paid to Stone in his life-time, but whether paid to his executors or not, he does not know; if so, they are liable therefor, having failed in their accounts rendered in the progress of the cause, to render any account thereof; that Washington Britton is dead, and his estate insolvent; that Sam Henderson, the surviving executor, is insolvent, and their bond as executor is lost; that under the decree in the former cause, there is a fund in Court due them, which they pray may be held to meet their liability, in the event they be

liable for the same. In the event the debt has not been paid, they pray a decree against Spurlock for the amount.

The foundation of the claim against Spurlock dates from the time Stone sold out his interest in the firm of D. G. Stone & Co, November 6, 1856. Spurlock sold to Stone as a part payment for his interest, a tract of land called "school land," upon which Spurlock owed a note payable in the branch bank of Tennessee, at Sparta.

Spurlock executed an instrument under seal, as follows: "I, S. B. Spurlock, do hereby obligate and bind myself to pay D. G. Stone on the first day of August next, the amount of my notes in the branch bank of Tennessee at Sparta, which were placed there for the school land that I have since sold to D. G. Stone; the above obligation is upon the condition that the said D. G. Stone takes up my notes in Sparta, on or before that time; this, November 22, 1856.

S. B. SPURLOCK. [SEAL.]"

This obligation was found among the valuable papers of Stone, and is made exhibit A to the present bill. There was also found the following paper, made exhibit B to the bill:

"We, D. G. Stone and S. B. Spurlock, in our trade relative to the school land trade, which was made November 6, 1856, understand each other this way—according to our agreement, D. G. is to take up the note by renewal, that S. B. Spurlock executed for the balance on said school land. The note is

payable at the Bank of Tennessee, at Sparta, and the said S. B. Spurlock is. to pay the amount of the note and interest from the date of the note up to the 6th of November, 1856, the balance of interest that may accumulate on said note, the said D. G. Stone is to pay ; and it was considered a ·cash trade at the time. The said S. B. Spurlock is ·to settle with Stone for them when taken up' according to this agreement, ($16 entitled to a credit on S. B. Spurlock & Co.'s books,) this, November 22, 1856.

Signed.                              S. B.. SPURLOCK,

D. G. STONE."

The latter sentence seems to have no connection with the matter.

It appears that Stone did not, in his life-time, lift Spurlock's notes from the bank as contemplated by these agreements, but .he made a trade with Ebenezer Jones, by which 'Jones was to substitute his notes· for Spurlock's notes, and this was done by Jones after the death of Stone, as we think the proof fully shows,

Henderson, Spurlock and the administrator of Britton answered the bill—the two former filed a joint answer. They all agree that the debt was not paid by Spurlock to the executors. Spurlock says, in ·his answer, that, after the execution of exhibit A, it was reported to have been lost, and that exhibit B was executed in lieu thereof, and the date had to correspond with exhibit A, and that he afterwards paid D. G. Stone according to the terms of exhibit B, and took his receipt upon a duplicate of exhibit B, re-

tained by him, which receipt and duplicate was lost by the casualty of the war, about 1863; they say, also, that he was not to pay to Stone the full amount of the notes when lifted by Stone, but a less amount agreed upon between them, but the amount is not stated.

As stated, Henderson joins Spurlock in this answer, and it is somewhat difficult to determine what position he takes in regard to the question whether the payment was made to. Stone in his life-time, but he seems at least to acquiesce in Spurlock's statement. Britton's administrator knows nothing of the facts, but expresses the opinion that the money was never paid.

The cause was heard, and there was a decree against Spurlock for the amount of this claim, from which he has appealed.

The first question urged for a reversal is that the Chancellor erred in refusing to dismiss the bill upon the defendant's motion, upon the ground that the complainant, Mason, had no right to revive the bill. It is very clear, that, ordinarily, the personal representatives are the only parties who have the right to maintain suits to recover debts due to the deceased, but where they, by collusion with the debtor, are refusing to take the necessary steps, and where they are insolvent, and the debt is about to be lost, we think the parties ultimately entitled may, in equity, proceed at once against both the debtor and representatives, to enforce their rights by the proper decree. See Story's Eq. Jur., §581, note 1.

2. It is argued that the cause should not have been tried immediately after disposing of the defendant's motion to dismiss, as previous to that time the cause had not been at issue. The defendant's answer was placed in the file in 1870, but was, by oversight, not marked filed, both parties, however, had treated the cause as at issue, and had taken testimony, and the defendants did not ask for a continuance, but announced themselves ready for trial; so we think there was no error.

3. It is insisted that the Court erred in allowing the record of the former cause to be read upon the trial. This record was referred to as part of the present cause by the pleadings upon both sides, and besides, almost every material fact established by that record is admitted by the pleadings in the present case.

4. It is again said that the Chancellor erred by directing in the final decree that the complainants bill be amended by adding Samuel Henderson as surviving executor of Stone as co-complainant, and rendering the decree in his favor. We think this was unnecessary. The bill, as we have said, was properly filed by Mason, as receiver and guardian, provided the facts show a proper care for the relief sought, and the error is, therefore, unimportant.

The real question in the case is, whether or not the defendant, Spurlock, paid this demand to Stone in his life-time; his obligation being produced, and it being shown that the condition upon which it became payable had been complied with. The *onus* is upon the

defendant, Spurlock, to establish the payment; his answer is not on oath.    He relies upon the fact, among others, that the executors of Stone were both well acquainted with his private business, and lived near him; one of them had been his legal adviser and friend; and although exhibits A and B came immediately to their possession, they did not return this debt in their inventory, or make any demand for payment, but, on the contrary, treated the obligation as paid and satisfied.    And further, that Henderson, in his testimony, proves that he and Britton thought at the time the debt had been paid.

On the other hand, it will be seen from the contract as set forth in exhibits A and B, that the money was not due from Spurlock to Stone until the first of August, 1857, and only then upon the condition that, by that time, Stone should have taken up Spurlock's note from the bank.    Stone died either in March or April, 1857, within some five months after the contract was made, and had not, at that time, taken up Spurlock's note or notes from the bank.    So it is clear that the money was not due or payable by Spurlock in the life-time of Stone, and it would hardly be supposed that Spurlock, under these circumstances, would have volunteered to make a payment which, by his contract, he was not bound to make.    At any rate, it would be incumbent upon him to prove the payment. The testimony of Henderson, when scrutinized, is not entitled to much weight; he, at most, expresses a vague impression that he believed it may have been paid, but

in substance, that he had no evidence of the fact. It will be remembered that Henderson was one of the surviving partners of D. G. Stone & Co., and his interest was in conflict with his duty to his testator's estate; he was also a partner with Spurlock, Henderson & Spurlock, then engaged in business. While placed in this embarrassing attitude, he should have required of his partner, Spurlock, strict evidence of the payments.

Spurlock says, in his answer, that exhibit A was reported as lost, and that exhibit B was executed in duplicate, in lieu thereof at a subsequent time, and dated back. As stated, exhibit A was executed November 22, 1856; Stone died in March or April, 1857; it was found among his valuable papers, as was exhibit B. There is nothing to show that the former was at any time lost, nor does the latter paper purport to have been executed in the place of any lost writing, it would have been most natural to have expressed this in writing, if true. Again, Spurlock, although he says in his answer that the money was paid to Stone in his life-time, does not detail the manner or circumstances of the payment. He says he had a receipt for the payment taken on a duplicate of exhibit B, and that the same was lost by the destruction of his papers in 1863. If this fact were so, and he exhibited this receipt to the executors of Stone as evidence of the payment, Henderson, who was cross-examined on this subject as to why he thought the debt paid, would have most probably remembered the

fact, yet his testimony discloses no such fact, nor is it proven by any witness, that such receipt was ever seen. Spurlock proves by one witness that he had valuable papers destroyed in 1863, but he does not attempt to prove that he ever had such a receipt.

It is certainly not clear that Spurlock would not have been a competent witness himself, to prove the loss or destruction of the receipt, although he could not have been a witness as to any transaction with or statement by Stone in his life-time. See Act of 1870, T. & S. Code, §3813*d*. Yet he did not offer himself as a witness. Under the circumstances, the presumption of payment from the lapse of time is not strong.

Without pursuing the discussion further, we conclude that the *onus* of proving the payment is upon Spurlock; that his answer, not on oath, is no evidence, and that he has failed to prove the payment by preponderance of testimony. There is nothing in the record to justify the executors of Stone for failing to proceed against Spurlock upon this demand.

We think it clear that this obligation being under seal, before private seals were abolished, the question of limitations depends upon the law as it stood before the adoption of the Code. See §47 of the Code. This being so, there was no Statute of Limitations applicable, nor was there any presumption of payment from the lapse of time. See *Gwyn* v. *Porter*, 5 Heisk., 253.

Upon examination of the record, we are unable to find satisfactory evidence of the amount of the notes

of Spurlock in the bank, taken up by Jones.    Exhibits A and B do not specify the amount of the note or notes.    We think by a proper construction of these papers, that Spurlock was bound to pay the amount of such note or notes, with interest up to the 6th of November, 1856, if taken up by Stone, but he was not bound to pay until the 1st of August, 1857, and Stone would lose the interest from the 6th of November, 1856, to the 1st of August, 1857.

The Chancellor charged Spurlock interest from the 23d of April, 1857, which was erroneous.    There being some doubt as to whether the depositions of Watson and Cochrane were properly allowed as to the amount of the notes, the matter not being in issue at the time these depositions were taken.

The cause will be referred to the Clerk of this Court for proof and instanter report, as to the amount of said note or notes, and for the amount with interest as above indicated, there will be decree against Spurlock.    The costs of this Court will be paid one-half by Spurlock and one-half out of the recovery, the costs of the Chancery Court as decreed by the Chancellor.