No. 27,720.

J. H. Peyton, as Administrator of the Estate of S. T. Slabaugh, *Appellant*, v. The Chase County National Bank, *Appellee*.

(262 Pac. 595.)

SYLLABUS BY THE COURT.

1. Limitations of Actions—*Computation of Statutory Period—Person Capable of Being Sued.* Where one person represents both sides of a conflicting claim, the general rule is that the statute of limitations does not begin to run until there is someone in existence by whom, and a different person against whom, the claim may be enforced.

2. Same—*Person Capable of Being Sued.* In an action by an administrator, with a will annexed, against the former executor of the estate under the will and a bank, of which the executor was president, to recover moneys of the estate alleged to have been wrongfully used by the former executor and the bank officials for the benefit of the bank, the statute of limitations did not begin to run against either of the defendants until the administrator, with the will annexed, was appointed.

Appeal from Chase district court; Isaac T. Richardson, judge. Opinion filed January 7, 1928. Reversed.

*Dudley Doolittle, Henry C. O'Reilly,* both of Strong City, *W. L. Huggins* and *O. T. Atherton,* both of Emporia, for the appellant.

*Charles E. Davis,* of Cottonwood Falls, and *Gilbert H. Frith,* of Emporia, for the appellee.

The opinion of the court was delivered by

Harvey, J.: This is an action by an administrator, with the will annexed, against the former executor of the estate under the will, and a bank of which the executor was president, to recover moneys of the estate alleged to have been wrongfully used by the former executor and bank officers for the benefit of the bank. Plaintiff recovered judgment against the former executor, from which no appeal has been taken. At the trial the court sustained the bank's

Limitations of Actions, 37 C. J. p. 812 n. 30. Money Received, 41 C. J. pp. 29 n. 6, 44 n. 85.

motion for judgment in its favor on the pleadings and opening statement of counsel. Plaintiff has appealed. The sole question before us is whether plaintiff's action against the bank was barred by the statute of limitations.

S. T. Slabaugh, a resident of Chase county and the owner of considerable real and personal property, died in April, 1921, leaving a will by which he authorized and directed his executor to sell, within two years, all his real property and from the proceeds pay certain bequests to his widow and children, and to convert his personal property into cash and divide the same among his children share and share alike. He requested that J. B. Sanders be appointed executor without bond. The will was duly admitted to probate April 16, 1921, and the executor appointed as requested in the will. For some years prior thereto, and continuously until about the first of the year 1925, J. B. Sanders was the president and an active managing officer of the Chase County National Bank. On July 8, 1924, he reported to the probate court that he had a balance of cash on hand belonging to the estate of $43,467.86, and on August 18, 1924, the probate court made an order for a partial distribution of the estate. On February 23, 1925, J. B. Sanders applied for leave to resign as executor. His resignation was later accepted, and on April 27, 1925, J. H. Peyton was duly appointed administrator, with the will annexed. On May 6, 1925, he made demand on J. B. Sanders for all moneys and property in his hands belonging to the estate. Sanders refused to pay over any money, but tendered to plaintiff certain notes, the face value of which aggregated $45,191.55, bearing various dates from December 23, 1923, to June 24, 1924, executed by various parties. Some of them had been made payable to J. B. Sanders; others to the bank, and these were indorsed "Pay to the order of J. B. Sanders, Ex., without recourse, The Chase County National Bank by C. H. Garrison, Vice President." The real value of any of these notes is not shown; perhaps they are worthless. Plaintiff declined to accept them.

The petition, filed March 25, 1926, alleges substantially the facts above stated, and further, that the officers of the bank knowingly and wrongfully used the moneys of the estate for the benefit of the bank, which was in a precarious financial condition. The bank filed an answer admitting formal matters, but in effect a general denial. When the case came on for trial, in December, 1926, after the jury

was selected, the opening statements made and a witness sworn, the defendant bank moved for judgment in its favor for the reason "that the petition does not state a cause of action in favor of the plaintiff and against the defendant." This motion was argued, considered and overruled. The bank then interposed a further demurrer to the petition and motion for judgment in its favor on the pleadings, as to all but one item (one of the notes which Sanders tendered to plaintiff was dated June 24, 1924—less than two years before the petition was filed), for the reason that the action, as to all other items, was barred by the statute of limitations. The argument is that the action is for conversion, and that the conversion took place at the time the money was wrongfully used, as shown by the dates of the several notes. The court took this view of the matter; plaintiff declined to try the case as to the one item only; the motion was sustained and judgment was rendered for the defendant bank. Plaintiff complains of this ruling. It was error.

There was no reason to treat the peculations of defendants as separate items, with plaintiff's right to recover to depend upon the dates of notes tendered by Sanders to plaintiff. Sanders had no authority to invest the money of the estate in notes, or in any other kind of property. His duty, under the will, was to convert the property of the estate into cash and to disburse that as the will directed. He had no authority from the probate court to loan the money of the estate or to invest it in any kind of property. Hence, the dates of the notes tendered to plaintiff, at most, pertain to details as to when or how the money was used. They have but little bearing upon the question of the bank's liability to plaintiff.

The gist of plaintiff's action against the bank is found in the allegations of the petition to the effect that the officers of the bank, conniving or conspiring with the executor of the estate, wrongfully used the money of the estate for the benefit of the bank. Just how they so used it is but a detail of the proof.

Appellee argues that, conceding for the purpose of the motion, that the money was wrongfully used as alleged, that such wrongful use amounts to a conversion to which the two-year statute of limitations applies; that there was at all times an executor of the estate, or an administrator, with the will annexed, and that an action might have been brought for the wrongful conversion at any time after such conversion. There are three difficulties with this argument. First,

plaintiff is not required to base an action on conversion as a tort, but may treat it as an action for money had and received. (*Washbon v. Bank,* 87 Kan. 698, 704, 125 Pac. 17.) But this theory need not be resorted to in this case. Second, the general rule is that the participant in a breach of trust cannot invoke the defense of the statute of limitations any more than the unfaithful trustee himself can do so. (*Washbon v. Bank,* supra.) In this view the fraudulent use of the money belonging to the estate for the benefit of the bank is regarded as continuing until an action may be maintained against the unfaithful trustee. Third (and this we regard the most important reason why appellee's contention is unsound), there was no one who could effectively maintain the action sought to be maintained in this case until Sanders had resigned or been removed as executor and an administrator had been appointed. The law is well settled that the statute of limitations does not begin to run until a cause of action accrues. On this point the courts all agree, though there is difficulty sometimes in determining when the cause of action accrued. Generally speaking, it is well settled that the statute of limitations does not begin to run until there are in being a person capable of suing and a different person capable of being sued (37 C. J. 812), as well as a court of competent jurisdiction in which the matter may be heard. As long as J. B. Sanders was executor, that situation did not exist. To expect that a suit might be maintained by J. B. Sanders, as executor, against the bank in which he charged himself as executor with fraud, and charged himself and other officers as representing the bank with fraud, and all of them with a conspiracy wrongfully to use the money of the estate for the benefit of the bank, would be an anomaly, at least, and one in which it could not be expected that there would be a fair determination of the rights of the parties. We had a similar situation in *State, ex rel., v. Bradbury,* 123 Kan. 495, 256 Pac. 149, in which it was sought to compel the board of trustees of a high school district to bring an action in their official capacity against themselves individually to recover funds alleged to have been unlawfully expended. The difficulties in maintaining such an action were there pointed out, and mandamus was denied.

This question was considered in *Bremer v. Williams,* 210 Mass. 256. There one Berry was trustee under the wills of several estates. He used money from one to pay obligations of another. Later

Bremer was appointed trustee of an estate, the money of which had been wrongfully used, and brought an action to recover. The question of the statute of limitations was raised. The court said:

"It is an underlying principle in the application of the statute of limitations that before it can begin to run there must be someone in existence by whom, and a different person against whom, the claim may be enforced. The statute implies that such persons are in being, and, if they are not, there is no room for its operation. It is the general rule that where one person represents both sides of conflicting claims this statute does not run. . . . Berry represented both sides from 1902 to 1905. The beneficiaries under the trusts during this period could not have instituted proceedings in the name of the estates. Berry held the legal title to the several estates, and was the only person who could represent them. It is perhaps legally possible that Berry might have brought a suit in equity seeking to have the results of his thefts apportioned among the estates he had defrauded. . . . But as a practical proposition, legal or equitable rights ought not to be predicated upon the theoretical possibility that an embezzler before his detection may seek a court of equity for the adjustment among his victims of the frauds he has perpetrated. Having regard to the characteristics of human nature, such a proceeding is almost, if not quite, inconceivable. It is not a substantial basis upon which to start the running of the statute of limitations." (p. 258.)

We have a similar situation here. From April, 1921, to April, 1925, J. B. Sanders, as executor of the will of S. T. Slabaugh, held the legal title to the property of the estate. The legatees named in the will were not in position to maintain this action. It is inconceivable that Sanders could have been expected to maintain it. The result is that the statute of limitations did not begin to run while Sanders was executor. This action was brought less than one year after plaintiff was appointed administrator, with the will annexed. Hence, it is not barred by the two-year statute of limitations, which pertains to actions for conversion, or to actions for relief on the ground of fraud, nor by the three-year statute of limitations for an action for money had and received.

Appellee cites *Scully v. McGrath*, 201 N. Y. 61. The statute of limitations was not raised in that case. The facts there are so different than they are here that we do not regard the case as being in point.

Appellee says quite a little about the petition not being sufficient to state a cause of action. Really, it is not in position to urge that question, since there is no cross appeal from the ruling of the court overruling its motion based on that ground. But in any event we do not regard the point good. The petition was not attacked by mo-

tion to make more definite and certain, nor by demurrer. Defendant answered. In that situation, when the case came for trial and defendant moved for judgment, which motion was in effect a demurrer to the petition, for the reason that it did not state facts sufficient to constitute a cause of action, all of the allegations of the petition and the reasonable inferences to be drawn therefrom should be construed most favorably for plaintiff. So construed, the petition states a cause of action against both defendants, charging that they, by their joint action, wrongfully used the money of the estate for the benefit of the bank, and the trial court so held. It is true plaintiff undertook to specify the particular manner in which that had been accomplished, while stating the fact that he did not know the real means by which it was accomplished. In order to ascertain the real facts, plaintiff had asked permission to inspect the records and papers of the bank pertaining to the matter in order that he might plead them more specifically. Defendant denied this request. Plaintiff then applied to the court for an order directing defendants to permit plaintiff to inspect and make copies of such records. After a hearing the court made an order allowing the application, giving defendants a definite time in which to comply therewith. Before that time elapsed they asked for an extension of the time, which was by the court granted. Defendants ultimately ignored the order and never complied with it. In a further effort to ascertain the real facts, plaintiff made application for, and had issued, letters rogatory to the circuit court of Jackson county, Missouri, which court recognized the letters, and, based thereon, subpœna *duces tecum* was issued for a national bank examiner to bring with him the books showing the examination of the defendant bank with respect to the moneys of this estate. The bank examiner appeared, but claimed his exemption from testifying by reason of the confidential, governmental character of the report of the examination. The result was that up to the time of the trial the defendant bank, by ignoring the orders of the court below and the request of plaintiff, prevented the plaintiff from knowing the facts with reference to the way the money was handled as shown by the books of the bank. It is therefore in no position to complain that plaintiff's allegations in that regard are not as definite as they should be. On the trial the question of whether the money was used in the specific manner alleged in the petition we believe not important, the real question being: Did the

defendant bank, with knowledge on the part of its officers of the fact that this money belonged to the estate, use it in any way for the benefit of the bank?

The judgment of the court below is reversed, with directions for a new trial in accordance with this opinion.