YAGER v. LIBERTY ROYALTIES
CORPORATION et al.

No. 2298.

Circuit Court of Appeals, Tenth Circuit.

Oct. 22, 1941.

Frank Settle, of Tulsa, Okl. (Eugene O. Monnet and Sam Clammer, both of Tulsa, Okl., on the brief), for appellant.

O. L. Lupardus, of Tulsa, Okl. (Underwood, Canterbury, Pinson & Lupardus, of Tulsa, Okl., on the brief), for appellees.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

BRATTON, Circuit Judge.

The trustee of United Royalty Company, a trust estate, sometimes herein called United, filed proof of claim against Liberty Royalties Corporation, a corporation in process of reorganization under section 77B of the Bankruptcy Act, 11 U.S.C.A. § 207, sometimes herein called Liberty. The claim was for $52,461.27, with interest, and for 592,742 units of United. The trustee of Liberty filed a motion for judgment on the ground that the pleadings and the record disclosed that the claim should be disallowed in its entirety. An amended proof of claim was subsequently filed which went more into detail respecting the facts. The trustee of Liberty objected to the amended claim on the grounds that it failed to state facts sufficient to constitute a cause of action or any basis for equitable relief; that the claim, if any ever existed, was barred by limitation; that it had been adjudicated adversely to the contention of the claimant in an action in the state court, which adjudication constituted a bar and an estoppel; and that the claimant was otherwise estopped to assert the claim.

The court entered an order reciting that, upon consideration of the objections to the claim and the motion for judgment on the pleadings, and after hearing arguments of counsel, the motion was sustained and the claim disallowed in its entirety. The trustee of United appealed.

 A motion was filed in this court to dismiss the appeal on the ground that the record was not filed and the action docketed within the time provided by law and the rules of this court, and that appellant did not comply with the requirements of law and the rules of this court in perfecting the appeal. The claim was denied on January 6, 1941, and on January 16 written notice of appeal was filed. On February 25 an order was entered extending the time to April 3 for filing the record and docketing the action on appeal; on April 2 a similar order was entered extending the time to April 14; on April 14 a like order was entered extending the time to April 16; and the record was filed and the action docketed on the date last mentioned. On April 14 appellant filed assignments of error and a praecipe, and served copies on the appellee; and on the succeeding day he filed what was denominated assignment of errors and statement of points upon which he intended to rely on appeal, and an amended praecipe, and copies were served on the appellee. Rule of Civil Procedure 75(a), 28 U.S.C.A. following section 723c, provides that promptly after an appeal has been taken the appellant shall serve on the appellee and file with the district court a designation of the portions of the record, proceedings and evidence to be contained in the record on appeal, and that the other party to the appeal may within ten days thereafter file and serve a designation of additional portions of the record, proceedings and evidence to be included; and rule 75(d) provides that in the event the appellant does not designate for inclusion the complete record and all proceedings and evidence, he shall serve with his designation a concise statement of the points on which he intends to rely. Nothing was filed called a designation of the portions of the record, proceedings and evidence to be contained in the record on appeal. But the document called a praecipe designated the pleadings which the appellant desired to be contained in the record, and there was no evidence to be included.

While the praecipe did not constitute a literal compliance with the rule in respect to content of the designation, it did advise the appellee of the parts of the record which the appellant desired to be incorporated in the record, and the assignments of error indicated the contentions which would be advanced. The rule further requires that the designation shall be filed promptly after the appeal has been taken. The praecipe was not filed until eighty-eight days after the filing of the notice of appeal, and the assignments of error were filed one day later. That did not constitute compliance with the rule in respect to time. Still the record was filed and the cause docketed in this court within the extended time allowed for that purpose, and the appellee was not prejudiced in its right to have included in such record anything additional to that designated by the appellant, or in understanding and meeting the points on which the appellant relies. The departures from the rules on which the motion to dismiss is predicated are emphatically disapproved, but the circumstances do not call for the extreme penalty of dismissal of the appeal. Cf. Adams v. New York, C. & St. L. R. Co., 7 Cir., 121 F. 2d 808. The motion to dismiss is denied.

■■■ The first ground of objection to the proof of claim was failure to state facts sufficient to constitute a cause of action or any basis for equitable relief against Liberty or its estate. That ground and the motion for judgment on the pleadings admitted all matters well pleaded in the proof of claim. It was alleged in the claim that United was created in 1922 for the purpose of acquiring an undivided one-half interest in the oil and gas and other minerals in 50,000 acres of land by exchanging therefor units or undivided interests of the authorized issue of 2,000,000 units; that seventy per cent of such units were to be issued to the owners of land in exchange for royalty rights, and thirty per cent to the trustees for their services in acquiring the royalties for a pool; that in June, 1929, 800,000 units had been issued to owners of land, 600,000 to the trustees, of which O. P. Burnham, one of the trustees owned about 200,000, and that approximately 600,000 remained unissued; that the trust owned between 13,000 and 14,000 acres of royalties, had accumulated about $55,000 in cash, and had a monthly income in excess of $1,000; that John Fernow, his wife, and Lester Bredine, were president and treasurer, vice-president, and secretary, respectively, of Liberty, and constituted its board of directors; that Fernow formed a fraudulent plan, scheme and conspiracy whereby Liberty would acquire absolute control of United and its cash and properties, at a nominal cost to Liberty; that pursuant to such scheme and conspiracy Fernow, acting for Liberty, and Burnham, a trustee of United, entered into a contract in which it was provided that Burnham should sell his 200,000 units to Fernow for $60,000 in cash and an equity in certain real estate in Tulsa, Oklahoma, that upon the consummation of such sale Burnham should cause the old trustees of United to resign in favor of new trustees to be nominated by Fernow, and that Burnham and the other old trustees should cooperate with Fernow in causing United to issue to Liberty its remaining units together with the accumulated dividends thereon in the approximate amount of $54,000 in exchange for royalties which were to be conveyed to United; that on August 3, 1929, pursuant to such scheme and contract, the 200,000 units were transferred to Fernow, the old trustees of United resigned, Fernow, his wife, and Bredine were elected president and treasurer, vice-president, and secretary, respectively, of United; that $52,000 of the accumulated funds of United were then used in making payment of the $60,000 to Burnham; that 592,742 units of United, worth more than $100,000, were issued to Liberty in exchange for nonparticipating, nonproducing, wildcat oil and gas royalty interests, some of which were encumbered, some of which were burdened with defective titles, and some of which had little value. In short, the proof of claim pleaded facts to the effect that while Fernow acted for Liberty and Burnham acted for United, and later when Fernow controlled and acted for both, he fraudulently stripped United of its property exceeding $150,000 in value for the benefit of Liberty. Clearly, under the facts thus pleaded and admitted by the objection and motion for judgment, Liberty became liable in equity to restore the units acquired in the transaction and still in its ostensible ownership, and to respond in damages for the money received and for any of the units of which disposition had been made.

Next comes the question of limitation. The cause of action accrued in 1929, and the proof of claim was filed in the re-

organization proceeding in January, 1940. Section 101, Oklahoma Statutes 1931, 12 Okl.St.Ann. § 95, provides that an action for taking, detaining or injuring personal property, including actions for recovery of specific property, and actions for relief on the ground of fraud, shall be brought within two years after the cause of action shall have accrued, and not afterwards. Again, the objection to the claim on the ground that the alleged claim, if any such ever existed, was barred by limitation, and the motion for judgment on the pleadings, admitted all matters well pleaded in the claim. Whether the statute of limitation was tolled during any part of the period intermediate the accrual of the cause of action and the filing of the claim must be determined by reference to the facts well pleaded in the proof of claim. The proof of claim charged in substance that Fernow was in control of both United and Liberty from the time of the transaction giving rise to the controversy until July, 1931, when Watts became receiver for Liberty; that Fernow continued in control of United until the intervention of receivership, sometime prior to March 9, 1932, when Watts was also appointed receiver of it; that Watts continued as receiver for Liberty and as receiver or trustee for United until August 9, 1938, when the court below appointed trustees for Liberty; and that he continued in control of United, either as receiver or managing trustee, until April 3, 1939, when the court below appointed the trustee in bankruptcy who presented the claim.

■ It is settled law in Oklahoma that a cause of action has accrued and the statute begins to run when one person may rightfully sue another. United States Fidelity & Guaranty Co. v. Fidelity Trust Co., 49 Okl. 398, 153 P. 195; Richards v. Flight, 97 Okl. 9, 222 P. 564; National Bank of Claremore v. Jefferies, 126 Okl. 283, 259 P. 260. And the appointment of a receiver does not operate to suspend the running of the statute during the time the receiver is in charge. Skinner v. First National Bank of Davis, 135 Okl. 61, 273 P. 893.

■ But it is implicit in the statute that before the period begins to run there must be some one in existence by whom, and a different person against whom, the claim may be enforced. That is an implied underlying principle of the statute. And the statute therefore is tolled during the time one person represents both sides of a conflicting claim. Gray v. Quicksilver Mining Co., C.C., 68 F. 677; Bremer v. Williams, 210 Mass. 256, 96 N.E. 687; Judge of Probate v. Bowker, 270 Mass. 497, 170 N.E. 451; Peyton v. Chase County National Bank, 124 Kan. 763, 262 P. 595. Cf. Thompson v. Thompson, 77 Ga. 692, 3 S.E. 261; Juilliard v. Orem's Executors, 70 Md. 465, 17 A. 333; Long v. Long, 118 Md. 198, 84 A. 375.

■ Manifestly the statute did not run during the time Fernow was in complete control of both United and Liberty. It is equally clear that it did not run during the subsequent time that he continued in charge of United, as he could not reasonably be expected to assert in good faith a claim against a corporation which he had controlled and in which he had a large financial interest, based upon a fraudulent scheme which he had devised and effectuated. Peyton v. Chase County National Bank, supra. Watts was thereafter in control of both United and Liberty, as receiver of one and as receiver or trustee of the other. But the fact that he acted under judicial appointment does not take the case out of the rule. In Bremer v. Williams, supra, the same person was trustee under the wills of two separate persons. He wrongfully used the funds of one estate for the benefit of the other. Despite the fact that in each instance he was trustee in probate, it was held that the statute did not run during his representation of both estates. A similar situation existed in Judge of Probate v. Bowker, supra.

■ Under the facts pleaded in the proof of claim, the statute first began to run on August 9, 1938, when the court below appointed trustees of Liberty, thus ending single control of both the debtor and creditor and bringing initially into existence a situation in which a fair determination of the rights of the parties could reasonably be expected. The claim was filed less than two years thereafter and was therefore not barred.

The challenged order is reversed and the cause remanded.