IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 16, 2017 Session

## IN RE ESTATE OF WILLIAM C. LINK

**Appeal from the Circuit Court for Davidson County**
**No. 14C1299     Ben Cantrell, Special Judge**

_____

**No. M2016-02202-COA-R3-CV**
_____

Plaintiff, the successor administrator for the decedent's estate, brought a negligence suit against the Metropolitan Government of Nashville and Davidson County based on the probate clerk's failure to cite the prior administrator in accordance with Tennessee Code Annotated section 30-2-602. Following the Metropolitan Government's filing of a motion for summary judgment, the trial court concluded that the asserted claims were barred by the Tennessee Governmental Tort Liability Act's one-year statute of limitations. For the reasons stated herein, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Reversed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and BRANDON O. GIBSON, J., joined.

Patrick B. Mason and Steven C. Ebbers, Germantown, Tennessee, for the appellant, Paul Allen Gontarek.

Keli J. Oliver and Melissa Roberge, Nashville, Tennessee, for the appellee, Metropolitan Government of Nashville & Davidson County.

## OPINION

### Background and Procedural History

On March 19, 2003, the Seventh Circuit Court for Davidson County (the "Probate Court") entered an order appointing John Clemmons ("Mr. Clemmons") to serve as

Administrator C.T.A.[1] for the Estate of William C. Link (the "Estate"). As is relevant to this appeal, the order required Mr. Clemmons to file an inventory and annual accountings for the Estate. Despite filing an accounting on September 15, 2004, Mr. Clemmons never filed another accounting for the Estate during his ten year tenure as Administrator C.T.A.

On April 10, 2013, Mr. Clemmons was removed from his position as Administrator C.T.A. for the Estate, and in his stead, the Probate Court appointed Paul A. Gontarek ("Mr. Gontarek") as Successor Administrator C.T.A. Approximately seven months later, on November 15, 2013, Mr. Clemmons pled guilty to stealing over $770,000.00 from the Estate and was sentenced to nine years' imprisonment as a result of his theft.

On April 1, 2014, Mr. Gontarek, in his capacity as Successor Administrator C.T.A., filed a complaint in the Davidson County Circuit Court against the Metropolitan Government of Nashville and Davidson County ("Metro"). The complaint sought relief on account of Mr. Clemmons's wrongdoing and asserted that the employees in the Probate Court Clerk's office had been a cause of the Estate's damages through their negligent failure to monitor Mr. Clemmons. Namely, the complaint alleged that despite Mr. Clemmons's failure to provide annual accountings pursuant to Tennessee Code Annotated section 30-2-601, the Probate Court Clerk had not cited Mr. Clemmons for this shortcoming. As alleged in the complaint, the Probate Court Clerk is required by statute to cite the personal administrator for failing to carry out his or her administrative duties. *See* Tenn. Code Ann. § 30-2-602 ("If any personal representative fails to settle the accounts as prescribed in § 30-2-601, the clerk shall cite the personal representative to appear and settle on a given day[.]"). Following the filing of the complaint, the trial judge assigned to the case recused himself. A few months thereafter, the Chief Justice of the Tennessee Supreme Court assigned the matter to be heard by a Special Judge.

On April 1, 2016, Metro moved for summary judgment as to the claims asserted against it. In addition to alleging that Mr. Gontarek's lawsuit was time-barred, Metro claimed that liability against it was precluded due to the fact that Mr. Gontarek had already obtained a default judgment against Mr. Clemmons for 100% of the Estate's losses in a separately-filed case. Metro's request for summary judgment was subsequently taken under advisement following a hearing in May 2016.

On September 26, 2016, the trial court entered an order granting summary judgment in favor of Metro and dismissing Mr. Gontarek's complaint. As a basis for its

---

[1] "C.T.A." is an acronym for *cum testamento annexo*, meaning "with the will annexed." *See In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *2 n.2 (Tenn. Ct. App. Feb. 25, 2009) (citation omitted). An Administrator C.T.A. is appointed by a court "when the testator has named no executor, or the executors named refuse, are incompetent to act, or have died before performing their duties." *Black's Law Dictionary* 49 (8th ed. 2004).

dismissal, the trial court concluded that the claims asserted against Metro were barred by the Tennessee Governmental Tort Liability Act's one-year statute of limitations. The trial court did not opine on the merits of the alternative basis for dismissal that Metro cited in its motion, holding that "[a]ll other issues . . . are . . . moot." This timely appeal followed.

## Issues Presented

Having reviewed the parties' principal appellate briefs, we perceive that the following two issues are presented for our review:

1. Whether the claims in the complaint are time-barred.

2. Whether the present lawsuit is barred due to principles of comparative fault.

## Standard of Review

Because this appeal stems from a grant of summary judgment, our inquiry "involves purely a question of law." *Staples v. CBL & Assocs., Inc.*, 15 S.W.3d 83, 88 (Tenn. 2000). Our standard of review is *de novo*, and we afford no presumption of correctness to the trial court's determination. *Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 703 (Tenn. 2008) (citations omitted). When ascertaining whether a grant of summary judgment was proper, we must make a fresh determination that the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Green v. Green*, 293 S.W.3d 493, 514 (Tenn. 2009) (citations omitted). Under that rule, a motion for summary judgment should only be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

"The moving party has the ultimate burden of persuading the court that . . . there are no genuine issues of material fact and that it is entitled to judgment as a matter of law." *Town of Crossville Hous. Auth. v. Murphy*, 465 S.W.3d 574, 578 (Tenn. Ct. App. 2014) (citation omitted). If the moving party does not meet its initial burden of production, the nonmoving party's burden is not triggered and the motion for summary judgment fails. *Id.* at 578-79 (citation omitted). However, if the moving party makes a properly supported motion, the burden of production then shifts to the nonmoving party to demonstrate the existence of a genuine issue of material fact. *Id.* at 578 (citation omitted). "When the facts and the inferences reasonably drawn from the facts are not disputed, the courts themselves can bring to bear the applicable legal principles to

- 3 -

determine whether the moving party is entitled to a judgment as a matter of law." *Cherry v. Williams*, 36 S.W.3d 78, 83 (Tenn. Ct. App. 2000).

## Discussion

*Statute of Limitations*

The first issue presented for our review is whether the claims in the complaint are time-barred. As previously noted, the trial court dismissed this case on the ground that the lawsuit was barred by the statute of limitations applicable to claims brought under the Tennessee Governmental Tort Liability Act. Under the Tennessee Code, the relevant limitation period for such claims is one year. *See* Tenn. Code Ann. § 29-20-305(b) ("The action must be commenced within twelve (12) months after the cause of action arises.").

In ruling that Mr. Gontarek's complaint filed on April 1, 2014 was time-barred, the trial court found that it was undisputed "that all the losses attributable to Mr. Clemmons occurred prior to April 1, 2013." According to Metro, the trial court was correct in dismissing the complaint as untimely. In advocating for its position on appeal, Metro maintains that Mr. Clemmons, the prior administrator for the Estate, had notice of the facts giving rise to the asserted claims well over a year prior to the commencement of this lawsuit.

Based on our review of the record, we are of the opinion that there are no undisputed facts asserted that actually establish Metro's statute of limitations defense. In an attempt to support its defense at summary judgment, Metro's statement of undisputed material facts set forth several assertions concerning (a) when the last unauthorized fee was taken by Mr. Clemmons and (b) when annual accountings were due. Based on Metro's assertions and Mr. Gontarek's responses thereto, the trial court found there to be no dispute that all losses occurred prior to April 2013. Although it can certainly be inferred that Mr. Clemmons was aware of his own misappropriation of funds and the fact that annual accountings were not being filed, we do not agree with Metro that the present lawsuit is time-barred.

As a general matter, a cause of action arises "when the plaintiff discovers, or in the exercise of reasonable care should have discovered, that he or she sustained an injury as a result of the defendant's wrongful conduct." *Sutton v. Barnes*, 78 S.W.3d 908, 916 (Tenn. Ct. App. 2002) (citation omitted). However, we also note that a cause of action does not accrue "in its proper sense, until there is a person by or against whom process can issue." *Glass v. Williams*, 84 Tenn. 697, 699 (1886) (citation omitted). Although this latter concern is not usually in question, we find it to be of particular significance in this case.

- 4 -

As we understand it, Metro's defense is predicated on the notion that Mr. Clemmons could have sued for the losses to the Estate that stemmed from his own malfeasance. Respectfully, we find such a proposition to be absurd, and to this end, we are in agreement with Mr. Gontarek's counsel that the present lawsuit is, in fact, timely. As an initial matter, there should be no question that Mr. Clemmons would not have been able to bring a suit against himself on behalf of the Estate. It is well-recognized in jurisdictions across the country that "[a] person cannot sue himself." *See, e.g.*, *Connell v. Murray*, 423 S.E.2d 304 (Ga. Ct. App. 1992) (citations omitted). As the North Carolina Supreme Court stated long ago, "it involves an absurdity, that a person should seek *from* himself, or withhold *from* himself." *Pearson v. Nesbit*, 12 N.C. 315, 316-17 (1827) (emphases in original). Moreover, as the Tennessee Supreme Court has held, this remains true even when the same person sues and defends in a different capacity. In *Tate v. Tate*, 227 S.W.2d 50 (Tenn. 1950), a bill was filed under a former section of the Tennessee Code seeking "to require the guardian of an incompetent to make payments from the ward's personal estate for the care, support and well being of the complainant." *Id.* at 51. The complainant, who was the sister of the incompetent, also happened to be his guardian. *Id.* The case was dismissed, and on appeal, the Tennessee Supreme Court affirmed. *Id.* at 52. In taking heed of the identity of the parties involved, the Supreme Court stated as follows: "[F]rom the caption of the cause, it appeared that complainant, individually, was suing herself as guardian, an anomaly not permitted in law or equity." *Id.* at 51 (citations omitted).

Of course, the particular question here is not whether Mr. Clemmons could have sued himself, but whether Mr. Clemmons could have sued Metro on behalf of the Estate. At oral argument, Metro answered this question in the affirmative and argued that, however improbable such a lawsuit may be, that does not countenance against the running of the limitation period. We disagree with Metro's legal conclusion. As we have already indicated, we reject the notion that Mr. Clemmons could have properly overseen the asserted claims against Metro, even if he chose not to sue himself. It cannot be expected that Mr. Clemmons would ever bring such a lawsuit given the nature of the allegations involved, and even if he had attempted to sue only Metro, his control over the course of litigation would necessarily mean that he would control the scope of light shed on his own wrongdoing. Allowing him to assume such a position is untenable. Indeed, the claims against Metro are predicated on losses sustained by Mr. Clemmons's own actions.

A similar issue was before the Kansas Supreme Court in *Peyton v. Chase County National Bank*, 262 P. 595 (Kan. 1928). In that case, an administrator brought suit against the former executor of the estate and a bank of which the former executor had been its president. *Id.* The suit was predicated on the allegation that the defendants had misused money belonging to the estate. *Id.* As it concerned the bank specifically, the

gist of the action was that the bank's officers had conspired with the former executor to wrongfully use money of the estate for the bank's benefit. *Id.* at 596.

Although a judgment was recovered against the former executor, the trial court dismissed the claims against the bank as untimely. *Id.* at 595-96. On appeal, the sole issue was whether the lawsuit against the bank was barred by the statute of limitations. *Id.* at 595. The bank maintained that, even assuming money had been wrongfully used as alleged, that use amounted to conversion for which a two-year limitation period applied. *Id.* at 596. The bank further maintained that "there was at all times an executor of the estate or an administrator with the will annexed; and that an action might have been brought for the wrongful conversion at any time after such conversion." *Id.* The Kansas Supreme Court ultimately rejected this argument for several reasons, among which was the inability of the former executor to bring suit:

> [T]his we regard the most important reason why appellee's contention is unsound—there was no one who could effectively maintain the action sought to be maintained in this case until Sanders had resigned or been removed as executor and an administrator had been appointed. The law is well settled that the statute of limitations does not begin to run until a cause of action accrues. On this point the courts all agree, though there is difficulty sometimes in determining when the cause of action accrued. Generally speaking, it is well settled that the statute of limitations does not begin to run until there are in being a person capable of suing and a different person capable of being sued . . . , as well as a court of competent jurisdiction in which the matter may be heard.
>
> As long as J.B. Sanders was executor, that situation did not exist. To expect that a suit might be maintained by J.B. Sanders, as executor, against the bank in which he charged himself as executor with fraud, and charged himself and other officers as representing the bank with fraud, and all of them with a conspiracy wrongfully to use the money of the estate for the benefit of the bank, would be an anomaly, at least, and one in which it could not be expected that there would be a fair determination of the rights of the parties.
>
> . . . .
>
> From April, 1921, to April, 1925, J.B. Sanders, as executor of the will of S.T. Slabaugh, held the legal title to the property of the estate. The legatees named in the will were not in position to maintain this action. It is inconceivable that Sanders could have been expected to maintain it. The

- 6 -

result is that the statute of limitations did not begin to run while Sanders was executor. This action was brought less than one year after plaintiff was appointed administrator with the will annexed. Hence it is not barred by the two years' statute of limitations[.]

*Id.* at 596-97.

The same reasoning applies here. Under Tennessee law, because the personal representative of an estate takes exclusive title to the decedent's general personal estate, only the personal representative may maintain a civil action to recover debts or other assets due the estate. *In re Estate of Hendrickson*, No. M2008-01332-COA-R9-CV, 2009 WL 499495, at *7 (Tenn. Ct. App. Feb. 25, 2009) (citations omitted). Therefore, Mr. Clemmons, as the former legal representative of the Estate, was the only individual with a right to pursue any claims on behalf of the Estate during his tenure as Administrator C.T.A.[2] Inasmuch as the claims at issue are predicated on his own wrongdoing, however,

---

[2] For the sake of completeness, we observe that the personal representative's exclusive right to bring a lawsuit on behalf of an estate is subject to some qualification, at least according to an 1874 opinion from the Tennessee Supreme Court. In *Mason v. Spurlock*, 63 Tenn. 554 (1874), the Tennessee Supreme Court referenced the ability of "the parties ultimately entitled" to proceed in equity against a debtor and an estate's personal representatives when the personal representatives "by collusion with the debtor, are refusing to take the necessary s[]teps, and where they are insolvent, and the debt is about to be lost." *Id.* at 559 (citation omitted). Ostensibly, *Mason* stands for the proposition that an estate beneficiary, in lieu of a personal representative, could bring a claim to enforce his or her rights in certain circumstances when the collection of a debt is threatened.

At the outset, it does not appear that *Mason* would have factual relevance to a case such as the present one. There has been no indication of "collusion," nor has there been any mention regarding Mr. Clemmons's insolvency during his tenure as an administrator. Moreover, *Mason* refers to the collection of *debts*, whereas this case does not involve the collection of a debt *per se*, but involves an attempted recovery against Metro on a negligence theory. However, even if the factual application of *Mason* is broader than its specific facts admit with respect to this latter point, its continued relevance is somewhat muddled by our citation to it in *In re Estate of Hendrickson*. In *In re Estate of Hendrickson*, the decedent's daughter sought to assert certain claims on behalf of the estate that the administrator had chosen not to pursue. *In re Estate of Hendrickson*, 2009 WL 499495, at *2. We noted on appeal that the personal representative had an exclusive right, but for the circumstances mentioned in *Mason*, to maintain suits to recover debts due to the deceased. *Id.* at *7 (citations omitted). Upon observing that none of the circumstances discussed in *Mason* were present, we concluded that the decedent's daughter had failed to establish a basis upon which she would be entitled to assert a claim on behalf of the estate. *Id.* Interestingly, despite this discussion, we seemed to insinuate that if the circumstances in *Mason* ever manifested, the estate's claims should not be maintained by a beneficiary but by another administrator. Indeed, we concluded our analysis as follows and held that the administrator was the only individual with a right to pursue claims on behalf of the estate until removed:

If the trial court determines that the Administrator is failing to pursue valid and viable claims on behalf of the estate, instead of permitting Ms. McKeithan to file an

- 7 -

we conclude that he could not have effectively maintained the present lawsuit, nor could he have been expected to do so. It is on this point where we disagree with Metro. Although Metro places much emphasis on Mr. Clemmons's knowledge of the underlying facts in this case and the fact that such knowledge existed more than a year prior to the commencement of this action, we are of the opinion that the establishment of such knowledge is of no consequence. For the reasons previously mentioned, the statute of limitations did not run while Mr. Clemmons was acting as Administrator C.T.A. It was not until the appointment of Mr. Clemmons's successor, Mr. Gontarek, that the present lawsuit could have been pursued on behalf of the Estate. As such, we reverse the trial court's determination that the asserted claims are time-barred.

### Metro's Reliance on the Doctrine of Comparative Fault

When Metro moved for summary judgment, it also argued that liability against it was precluded due to the fact that Mr. Gontarek had already obtained a default judgment against Mr. Clemmons for the Estate's losses in a separately-filed case. Although the trial court did not reach the merits of this issue and relied solely on the statute of

---

Intervening Complaint to assert additional claims on behalf of the estate, the trial court has the authority under Tenn. Code Ann. § 30-1-109(a) to appoint an administrator ad litem to assume the role as the plaintiff in this action in lieu of, but not in addition to, the Administrator to pursue such claims as the Administrator ad litem deems appropriate. Nevertheless, **unless and until the Administrator's exclusive right to pursue the claims against Defendant is removed** and awarded to an Administrator ad litem, **only Thomas Ware, in his capacity as the Administrator, has the right to pursue claims on behalf of the estate against Defendant**.

*Id.* at *8 (emphasis added).

For purposes of this appeal, we need not decide the continuing vitality of *Mason*. Nor do we need to decide whether it would result in a successor administrator's claim being time-barred—even though the prior administrator could not bring suit—because of the knowledge and ability to sue that may have been possessed by an estate beneficiary. As already noted, there has been no indication that the circumstances mentioned in *Mason* (collusion and the administrator's insolvency) were present during Mr. Clemmons's tenure as the Estate's representative. Thus, even aside from the fact that this case does not strictly involve the collection of a debt, the absence of the triggering circumstances in *Mason* means that only Mr. Clemmons could bring suit on behalf of the Estate during his tenure as Administrator C.T.A. However, even assuming *arguendo* that *Mason* would have permitted an estate beneficiary to assert the present claims before Mr. Clemmons was removed such that the cause of action accrued with respect to the Estate, the record does not establish that Mr. Gontarek's lawsuit was untimely. The statement of undisputed material facts submitted by Metro at summary judgment did not contain any assertion as to the knowledge of any estate beneficiary concerning underlying losses and alleged negligence of Metro. Thus, even assuming that the timeliness of the claims could have been impacted by the knowledge of an estate beneficiary, there is nothing in the asserted statement of facts which establishes such knowledge.

limitations in its dismissal of the complaint, we now turn to Metro's alternative argument.[3]

Metro's argument is grounded in the doctrine of comparative fault. As developed in its appellate brief, it contends that 100% of the fault for the Estate's losses has already been allocated against Mr. Clemmons, thereby precluding any judgment against it in the present action:

> Plaintiff has already elected to pursue and obtain a judgment against Clemmons. The judgment against Clemmons granted the Plaintiff's request that Clemmons be found liable for all damages to the Link Estate. The Link Estate cannot now be permitted to attempt to reallocate the fault to the Metropolitan Government and obtain a double recovery. Plaintiff had the opportunity to pursue both the Metropolitan Government and Clemmons in the same action or to proceed against each simultaneously, but instead chose to request and was granted a default judgment for all the damages sustained to the Link Estate. To now permit a recovery against the Metropolitan Government would violate the principles of comparative fault and sanction a double recovery for the Plaintiff.

There is no question that Mr. Gontarek filed a separate lawsuit against Mr. Clemmons for the Estate's losses related to this matter, and there is no dispute that a default judgment has been entered against Mr. Clemmons.[4] We disagree with Metro, however, that this case is limited by comparative fault principles. For the reasons explained below, we are of the opinion that the doctrine of joint and several liability is implicated such that the

---

[3] Here, Metro's alternative argument was raised and argued at both the trial court and on appeal. The facts pertaining to the alternative argument are not disputed and the question presented is solely one of law. In order to avoid continuing litigation on Metro's alternative argument and the commensurate expenses and delay that would accompany further consideration of the issue in the trial court, judicial economy warrants addressing the alternative legal argument in this appeal even though the trial court chose not to do so. Judicial abstinence on this pure question of law in this appeal would only leave the door open for another potential appeal in which our review would be *de novo* given that the issue is one of law. In this vein, we certainly do not disagree with Metro that consideration of its alternative argument is proper. Indeed, were we to find favor in Metro's argument, we would be free to affirm the trial court on that basis. *See Hill v. Lamberth*, 73 S.W.3d 131, 136 (Tenn. Ct. App. 2001) (noting that this Court can affirm the trial court's grant of summary judgment on different grounds). Of course, for the reasons discussed herein, we do not find favor in Metro's argument.

[4] As a technical matter, we observe that despite the entry of a default judgment, the determination of damages was reserved for a later hearing. There is no indication in this record that the separate case filed against Mr. Clemmons has been finally resolved.

maintenance of a suit against Mr. Clemmons does not present a bar to prosecuting the present action.

In the seminal decision *McIntyre v. Balentine*, 833 S.W.2d 52 (Tenn. 1992), the Tennessee Supreme Court abandoned the common law doctrine of contributory negligence and adopted a modified system of comparative fault. *Id.* at 56-57. In connection with this important shift in Tennessee tort law, the Supreme Court recognized that its decision would "affect[] numerous legal principles surrounding tort litigation." *Id.* at 57. Among other things, the Supreme Court stated, in dictum, that its holding rendered the doctrine of joint and several liability obsolete. *Id.* at 58. Notwithstanding this announcement, subsequent decisions have observed that the doctrine of joint and several liability was not entirely extinguished in *McIntyre*'s wake. *See generally Banks v. Elks Club Pride of Tenn. 1102*, 301 S.W.3d 214, 219-20 (Tenn. 2010) (outlining several circumstances in which the doctrine of joint and several liability remained viable following *McIntyre*).

As is relevant here, we note that post-*McIntyre* decisions indicate that the conduct of a negligent defendant should not be compared with the intentional conduct of another when the intentional conduct is a foreseeable risk created by the negligent actor. Consider the Supreme Court's decision in *Turner v. Jordan*, 957 S.W.2d 815 (Tenn. 1997). In that case, a nurse was attacked by a psychiatric in-patient at a Nashville hospital. *Id.* at 816. After she was attacked, the nurse sued the hospital's attending psychiatrist and alleged that his failure to use reasonable care in the treatment of the patient had proximately caused her injuries. *Id.* at 817. Although the defendant psychiatrist argued that his negligence should be compared to the intentional actions of the patient, *id.* at 821, our Supreme Court disagreed, reasoning as follows:

> In our view, the conduct of a negligent defendant should not be compared with the intentional conduct of another in determining comparative fault where the intentional conduct is the foreseeable risk created by the negligent tortfeasor. As other courts have recognized, comparison presents practical difficulties in allocating fault between negligent and intentional acts, because negligent and intentional torts are different in degree, in kind, and in society's view of the relative culpability of each act. Such comparison also reduces the negligent person's incentive to comply with the applicable duty of care. Moreover, while a negligent defendant may, of course, raise a third party's intentional act to refute elements of the plaintiff's negligence claim such as duty and causation, fairness dictates that it should not be permitted to rely upon the foreseeable harm it had a duty to prevent so as to reduce its liability.

- 10 -

*Id.* at 823.

The principle in *Turner* was revisited a few years later in *Limbaugh v. Coffee Medical Center*, 59 S.W.3d 73 (Tenn. 2001). *Limbaugh* stemmed from an incident where a nursing home employee physically assaulted one of the nursing home's residents. *Id.* at 76-77. Following the attack, the plaintiff filed suit against the nursing home employee and also asserted a claim against the nursing home. *Id.* at 77. Concerning the latter defendant, the complaint alleged that the nursing home "had prior notice of [its employee's] propensity for violence and therefore had a duty to take reasonable precautions to protect its residents from the foreseeable acts of a violent staff member." *Id.* Although the case was factually distinguishable from *Turner* inasmuch as the plaintiff in *Turner* had not sued all tortfeasors but only the attending psychiatrist, the Supreme Court did not find this to be dispositive. In addition to reaffirming the principle established in *Turner, id.* at 87, the Supreme Court concluded in *Limbaugh* that "where the intentional actor and the negligent actor are both named defendants and each are found to be responsible for the plaintiff's injuries, then each defendant will be jointly and severally responsible." *Id.* (citation omitted). Apportionment of fault is not necessary in such a scenario, as each defendant is liable for the full amount of the plaintiff's damages. *Id.*

In this case, given the theory of liability that is advanced against Metro, we are of the opinion that an apportionment of fault is unnecessary. Assuming liability can be established, Metro would be liable for the entire amount of damages. Indeed, as in *Turner* and *Limbaugh*, the negligence claim herein is predicated on the notion that alleged negligence was a proximate cause of harm sustained by another person's intentional tortious action. In this case, the specific assertion is that Metro's negligence caused harm to the Estate because it enabled Mr. Clemmons's malfeasance. Although we do not opine on the substantive merits of this claim, we fail to see how it does not fall within the analytical framework of *Turner* and *Limbaugh*. As Metro itself stated at the opening of its motion for summary judgment, "Plaintiff has brought this action . . . alleging that the negligence of the Metropolitan Government allowed John Clemmons . . . to steal significant sums of money because the Probate Court Clerk's Office . . . did not require annual accountings to be filed." Accordingly, because the liability of Mr. Clemmons and Metro would be joint and several, it is of no consequence that a judgment has already been entered against Mr. Clemmons in another case.[5] When joint and several liability is implicated, the tortfeasors at issue may "each . . . be proceeded against separately to judgment." *Schoenly v. Nashville Speedways, Inc.*, 344 S.W.2d 349, 351

---

[5] As alluded to earlier, the record reflects that the separate case against Mr. Clemmons is not final inasmuch as no damages have been assessed.

(Tenn. 1961) (citations omitted).  The plaintiff is merely limited to one satisfaction for the same injury.  *Id.* (citations omitted).

Although not stated directly, Metro's brief seems to suggest that the General Assembly intended to overrule *Limbaugh* by passing Tennessee Code Annotated section 29-11-107.  In part, that statute reads as follows:

(a) If multiple defendants are found liable in a civil action governed by comparative fault, a defendant shall only be severally liable for the percentage of damages for which fault is attributed to such defendant by the trier of fact, and no defendant shall be held jointly liable for any damages.

(b) Notwithstanding subsection (a), the doctrine of joint and several liability remains in effect:

(1) To apportion financial responsibility in a civil conspiracy among two (2) or more at-fault defendants who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish by concert a lawful purpose by unlawful means, which results in damage to the plaintiff; and

(2) Among manufacturers only in a product liability action as defined in § 29-28-102, but only if such action is based upon a theory of strict liability or breach of warranty.  Nothing in this subsection (b) eliminates or affects the limitations on product liability actions found in § 29-28-106.

Tenn. Code Ann. § 29-11-107.  Herein, we do not need to opine on this statute's impact in any way.  The statute is simply not applicable to this case, a point Metro concedes.  Indeed, the statute applies to all actions accruing on or after July 1, 2013.  Although there is certainly a legal disagreement between the parties as to when the claims in the present lawsuit arose for the purpose of the statute of limitations, no one argues that the claims accrued on or after the effective date of Tennessee Code Annotated section 29-11-107.

In summary, because the theory of recovery against Metro implicates the joint and several liability doctrine, it is clear that Mr. Gontarek's pursuit of relief against Mr. Clemmons in another lawsuit poses no bar to the maintenance of the present action.  In reaching this conclusion, we do not opine on the merits or the substantive validity of the negligence claim against Metro.  We merely hold that dismissal is not warranted due to the alternative argument raised by Metro.

**Conclusion**

For the reasons expressed herein, we reverse the dismissal of Mr. Gontarek's lawsuit. Costs of this appeal are assessed against the Appellee, the Metropolitan Government of Nashville and Davidson County. This case is remanded for the collection of costs, enforcement of the judgment, and for such further proceedings as may be necessary and consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE