Lewis v. Moody.

LULA LEWIS *v.* GLADYS MOODY *et al.*

(*Nashville.* December Term, 1923.)

1. **INSANE PERSONS.** Chancery court without power to apply lunatic's income for others than his children and descendants.

Under Acts 1851-52, chapter 163, now Thompson Shannons Code section 5461 et seq., making jurisdiction of chancery court over person and estate of lunatic concurrent with that of county court, does not authorize chancery court to appropriate lunatic's estate for benefit of persons other than his children and descendants, and such court therefore properly refused to apply portion of unmarried lunatic's income to support of his mother and minor nieces. (*Post, pp.* 688-691.)

Acts cited and construed: Acts 1851-52, chs. 57, 163.

Case cited and distinguished: Oakley v. Long, 29 Tenn., 254.

Code cited and construed: Sec. 3691 (1858); Sec. 5461 (T.-S.).

2. **INSANE PERSONS.** Jurisdiction of chancery court over lunatic's person and estate is purely statutory.

In Tennessee, jurisdiction of chancery court over person and estate of lunatic is purely statutory. (*Post, pp.* 691, 692.)

Cases cited and approved: Fentress v. Fentress, 54 Tenn., 428; Ex parte Dozier, 63 Tenn., 81.

FROM MAURY.

Appeal from the Chancery Court of Maury County.— HON. THOS B. LYTLE, Judge.

J. M. HAYES and HORACE FRIERSON, JR., for appellant.

HUGHES, HATCHER & HUGHES, for appellees.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

George Lewis was formerly a soldier in the United States army, serving several years. On October 3, 1919, he was discharged from service on account of his mental condition. He is at present confined in one of the Tennessee Hospitals for the Insane, and his condition is regarded as incurable. Prior to his discharge from the army he had allotted to his mother, Lula Lewis, $15 per month of his pay of $30 per month. This sum was paid to the mother each month by the government authorities. After George Lewis became insane, the Maury County Trust Company was appointed his guardian. Upon becoming insane he likewise became entitled to a pension under federal laws of $100 per month, and this pension has been paid to his guardian. The government also pays his expenses at the insane asylum, and the pension paid to the guardian is not used, and merely accumulates in the hands of the latter. Lula Lewis, the mother, is needy, but neither the guardian of her son nor the government authorities have felt authorized under the law to divert any part of the son's pension to her support, nor have they felt authorized to continue the arrangement, made by the son before he lost his mind, of appropriating $15 a month out of the son's income for the benefit of the mother.

George Lewis is unmarried. He has three adult brothers, and there are two little girls, children of his deceased sister, who live with his mother. These parties are his only heirs and distributees.

The bill herein was filed by the mother, joined by the

brothers, against the guardian and the minor nieces. Its object was to have a portion of the income of George Lewis applied to the support of the mother and the little girls A guardian *ad litem* was appointed for the children, who filed a formal answer. The guardian of the insane man interposed a demurrer, in which the power of the court to grant the relief sought was challenged. The demurrer was sustained in the court below, and an appeal taken by the complainants to this court. Upon consideration of the matter, with the same regret which no doubt attended the chancellor's conclusion, we must reluctantly affirm his decree.

Prior to chapter 57 and chapter 163 of the Acts of 1851-52, the chancery court in Tennessee had no jurisdiction of the person or estate of a lunatic. This question arose and was discussed in *Oakley* v. *Long,* 10 Humph., (29 Tenn.), 254. The court there said:

"Our act of 1797 (chapter 41) gives to the county courts jurisdiction, to ascertain by inquisition, the idiocy or lunacy of any idiot or lunatic, who may reside in their county, and upon the return of such inquisition, to appoint guardians, etc. No legislative enactment confers upon the chancery court, either directly or by implication, jurisdiction upon this subject. It does not, therefore, exist, unless it appertains to the chancery court, as a branch of its equity jurisdiction. But all the authorities are explicit that this is not the case. In England, the chancellor, it is true, exercises this jurisdiction; but it is a personal trust, delegated to him under the sign manual of the king, and not as a court of equity. In Shelford on Lunacy. page 15, it is said: 'When a person is found an idiot or lunatic the king alone has the power to grant the custody of the

149 Tenn.—44

idiot or lunatic and his estate by sign manual, and 'here-fore, to save repeated applications to the crown, it has been the practice of the crown to intrust such power, by warrant, under the sign manual, countersigned by the two secretaries of State, to the Lord Chancellor, on his com-ing into office, by virtue of which warrant, and not as Chancellor, he has the ordering, and disposition of the persons, and estates of idiots and lunatics; and such war-rant confers no jurisdiction, but only a power of admin-istration.' Again (page 18) he says: 'Neither the Master of the Rolls, nor the Vice Chancellor can sit for the Lord Chancellor, or make any orders in matters of lunacy.' "

After some further discussion of the authorities it was added:

"In the application of these principles, how can it be said that the court of chancery in this State has juris-diction of this subject? We have no king, whose duty and prerogative it is, as *parens patriæ,* to take care of persons who have lost their intellects. Nor is there any depart-ment of our government which has the right to exercise the duties and powers which belong, in England, to the prerogatives of the crown, unless those duties and powers have been conferred by statute."

*Oakley* v. *Long* was decided at the December term, 1849. At the next session of the legislature the two acts above referred to were passed.

Chapter 163 of the Acts of 1851-52 provided:

"That from and after the passage of this act, the chan-cery court shall have concurrent jurisdiction with the county court over the persons and estates of idiots, luna-tics and other persons of unsound mind."

Then follow other provisions not material in this con-nection.

Chapter 57 of the Acts of 1851-52 provided that the chancery court might direct the partition and division of reasonable portions of the estates of persons laboring under confirmed mental unsoundness among their children or descendants, charging such portions as advancements. This power of the chancery court, however, was carefully restricted to cases in which it should appear that the insane person had not previously executed a will that might be valid and to cases in which it was manifestly to the interest of the insane person and his family that such division should be made. The court was also directed to see that ample means were retained for the support of the insane person and to protect the rights of his wife, if married, and the court was required to take refunding bonds from those to whom distribution was made, to require the return of the property assigned when ordered by the court. This act also contains some other provisions not necessary to be considered here.

The statutes referred to were carried into the Code of 1858 at section 3691 et seq., and are contained in Thompson's-Shannon's Code in section 5461 et seq.

In England, where the Lord Chancellor acts as the personal delegate of the king, and in some of our States, where such powers are assumed by the chancery court, an allowance out of the income of a lunatic for the benefit of persons whom he is not legally obligated to support is sometimes made. This is done upon the theory that the court in so acting is doing what the lunatic himself would have done, had he not lost his faculties. See cases collected in note, 34 L. R. A. 300.

In Tennessee, however, the jurisdiction of the chancery court over the person and estate of a lunatic is purely

statutory. *Fentress* v. *Fentress,* 7 Heisk., (54 Tenn.), 428; Dozier, Ex parte, 4 Baxt. (63 Tenn.), 81.

Under chapter 163 of the Acts of 1851-52, heretofore quoted, the jurisdiction of the chancery court in this matter is "concurrent" with that of the county court. Chapter 57 of the Acts of 1851-52 only enlarges the jurisdiction of the chancery court as therein stated. No power is given to the chancery court to appropriate the estate of a lunatic for the benefit of persons other than his children and descendants. The power given is so particularly guarded that it would be an unwarrantable assumption of jurisdiction for the chancery court to attempt a distribution of the lunatic's property among other persons.

It results, as heretofore indicated, that the decree of the chancellor must be affirmed, and this bill dismissed