Monds *et al. v.* Dugger *et al.*

(*Knoxville,* September Term, 1940.)

Opinion filed November 23, 1940.

LYNCH, WHITAKER, HALL & ALLISON, of Chattanooga, for complainants.

W. A. WILKERSON, of Chattanooga, for defendant R. W. Dugger, guardian.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

This bill was filed by brothers and sisters of a mental incompetent against his guardian to have the latter appropriate a certain part of the incompetent's income to the support of these collateral relatives. A demurrer was filed by the guardian, which the chancellor sustained and dismissed the bill. Complainants appealed.

The bill averred that the incompetent was an unmarried man; that he had formerly been in the United States Army; that he had become totally disabled, permanently insane, and was confined in a Government hospital with no chance of recovery. It was further shown that from his war risk insurance policy his guardian had been receiving the sum of $28.75 per month for many years and would continue to receive said amount so long as the incompetent lived. That the guardian had also collected the proceeds of bonds in the amount of $1,000, commonly known as the soldier's bonus, and that from these sources and the income from same the guardian had accumulated a fund in excess of $12,000.

It was further alleged in the bill that on account of his permanent and total disability received in the line of duty during the World War the sum of $100 per month had been appropriated to the incompetent and was in the hands of the United States Veterans Administration to his credit to be paid to his heirs at law at his death. That the accumulation from this source amounted at present to more than $25,000. That altogether the incompetent had an estate of the present value in excess of $37,000.

The bill went on to set out that the complainants were the brothers and sisters of the incompetent, were aged and needy, and, together with another brother, were the heirs at law of the incompetent. It was stated that all the expenses of the incompetent in the hospital were borne by the Government and that the money expended by the guardian on account of the incompetent amounted to only $15 per annum.

The bill then contained this allegation:

"The complainants charge that they are all dependants, that they would have a legal or a moral right to

claim support from their incompetent brother, were he in full possession of his faculties, and the complainant believes that, if their said brother were in possession of his faculties, and had personal control of the large estate that has accumulated and continues to accumulate for him, he would make provision for their support. They believe that if the sum of $25 a month is set aside for each of them, to be charged against their distributive shares of this estate, which would come to them or their heirs at the death of the said Benjamin F. Evans, that an ample portion of the incompetent's estate will remain in tact for his support, maintenance, care and comfort for the remainder of his life.''

The bill thereupon prayed that the guardian be directed to pay to each of the complainants out of the incompetent's estate the sum of $25 a month, to be charged against their distributive shares of the brother's estate upon his death.

A case quite like this came before the court in 1923, styled *Lewis* v. *Moody,* reported in 149 Tenn., 687, 261 S. W., 673. The facts there made out a somewhat stronger case than is here present for an appropriation of part of the incompetent's estate. Relief there was sought by the mother and minor nieces of the incompetent. The court, however, held that it was without jurisdiction to make such an appropriation from the incompetent's estate. Reviewing the earlier decisions, it was shown that a court of chancery in this State had only such jurisdiction over lunatics and their estates as has been conferred by statute. That the only statute authorizing the court to act in such matter was chapter 57 of the Acts of 1851-52, which provided that the chancery court might direct the partition and division of reasonable portions of the estates of persons laboring under confirmed men-

tal unsoundness among their children or descendants, charging such portions as advancements. This statute put numerous restrictions upon the exercise of this power noted by the court. No authority was found for an appropriation from the estate for the benefit of the mother and nieces of the incompetent in *Lewis* v. *Moody, supra,* and the chancellor's decree dismissing that bill was affirmed.

Obviously, to meet this decision, chapter 28 of the Acts of 1927, carried into the Code at sections 9652-9655, was enacted. The second and third sections of that act are not necessary to be considered at present, but section 1 of the act, section 9652 of the Code, is as follows:

"Courts having jurisdiction of the estates of lunatics, idiots and persons of unsound mind, where the mental unsoundness of the incompetent is shown by competent medical proof to be of long duration, or of confirmed or permanent character, may, in their discretion, authorize and direct the legal guardian of such incompetent to make provision or payment from the personal estate of such incompetent for the care, support and well being of the children, wife or husband, father and/or mother, brothers and sisters, or the child or children of any deceased brother, or sister, preference being given by the court to the dependents of the incompetent in the order herein set out; provided, that in cases other than that of the child or children or wife of the incompetent, it must be shown by competent and satisfactory proof that the person of any other class mentioned, making application for an allowance, was dependent on the said incompetent for support and maintenance prior to the time the said incompetent became mentally disabled, or was, at the time of the application for such provision or payment, actually dependent, and has a legal or moral

right to claim support from the incompetent were he in the full possession of his faculties; and provided, further, that in making the award in favor of such dependent or dependents the court shall take into consideration the situation, amount and value of the personal estate of the incompetent at the time of making the award, and any probable increase or decrease thereof, in the future; the age and condition, physical, financial or otherwise, of the child, wife or husband, father or mother, brother or sister, or other persons claiming dependency, and see to it that an ample portion of the incompetent's estate, personal or otherwise, shall remain intact for the support, maintenance, care and comfort of such incompetent."

The chancellor was of opinion that this act was unconstitutional in so far as the Legislature undertook to authorize the taking of the property of the incompetent for the satisfaction of a naked moral obligation. The bill here discloses nothing more. If the statute is so construed, we agree that it might be contrary to the limitations of Section 8 of Article 1 and in violation of Section 8 of Article 11 of the Constitution of Tennessee and of the Fourteenth Amendment, to the Federal Constitution. We think, however, the statute may be saved by proper interpretation of its meaning.

In *Lewis* v. *Moody, supra* [149 Tenn., 687, 261 S. W., 674], we said that, "In England, where the Lord Chancellor acts as the personal delegate of the king, and in some of our States, where such powers are assumed by the chancery court, an allowance out of the income of a lunatic for the benefit of persons whom he is not legally obligated to support is sometimes made. This is done upon the theory that the court in so acting is doing what the lunatic himself would have done, had he not lost his faculties."

■ Prior to the Act of 1927 this jurisdiction was lacking in our chancery court, but we think it was the intention of the Legislature to confer such jurisdiction by the statute in question. That is to say, the statute gave to the court the old delegated power possessed by the Lord Chancellor with respect to the estate of lunatics —the power of the court to assume the place of the lunatic, to act for the lunatic with respect to his property, and the statute accorded to such action of the court the same effect as would have been given to an act of the incompetent person had he been in his right mind.

Since in a case of this sort the court acts in the incompetent's stead, an appropriation of the incompetent's estate is equivalent to a voluntary appropriation of that estate by a person of sound mind. Such an appropriation, as though voluntary, is not a taking of property contrary to the constitutional provisions named.

■ The power of a court of chancery to dispose of an incompetent's estate to persons to whom the incompetent was under no legal obligation always has been regarded as a power to be exercised with great caution. We do not think that our Act of 1927 was in any sense designed to relax the caution properly attendant upon the power conferred.

In *Re Flagler*, 248 N. Y., 415, 162 N. E., 471, 59 A. L. R., 649, the New York Court of Appeals considered an application to appropriate a small amount of the income of the great estate of Mrs. Flagler, a mental incompetent; to the support of a collateral relative. The court said:

"Convincing proof must be given, it is said, beyond the affluence of the incompetent's estate and the necessities of the applicant, that the incompetent person, if sane, would make the allowance asked for, to justify the

court in making the allowance. . . . If Mrs. Flagler to-day could decide upon the disposition of the income of her great estate, moral or charitable considerations would dictate her decision only to the extent that she felt their force. Her great affluence might impel her to relieve the distress of her cousin; the law would not compel her to do so if she decided otherwise. The power of the court to dispose of her income is not plenary. The court may not be moved by its own generous impulses in the disposition of the income of the incompetent. In reaching decision it may give to moral or charitable considerations only such weight as it finds that the incompetent herself would have given to them. Allowances for the support of collateral relatives of the incompetent have been made 'upon the theory that the lunatic would, in all probability, have made such payments if he had been of sound mind.' "

In the Flagler case it appeared that Mrs. Flagler had an annual income of about $500,000, and the proof further showed that prior to her incompetency she had been interested in this collateral relative and had made small contributions in her aid. On the strength of this proof, the New York court approved a rather small allowance for the benefit of the relative out of the estate of the incompetent.

█ At page 653 of 59 A. L. R. will be found an extensive note which collects the cases dealing with the right of a court to use the funds of an incompetent for the benefit of other persons. An excellent statement of the rule with reference to allowances to collateral relatives, to whom the incompetent is under no legal obligation, is contained in Re Kernochan, 84 Misc., 565, 146 N. Y. S., 1026, 1028, where it is said:

"Before an allowance may be granted from an incompetent's estate to one to whom the incompetent owes no duty of support, it must be established that the incompetent if sane would make the allowance. The proof required is that the incompetent should have known the applicant and should have indicated while sane by acts or words that he or she had such an intention to support the applicant; or that such facts and circumstances be made to appear as would show beyond a reasonable doubt that the incompetent, if sane, would assume such a burden. The courts are required to scrutinize the evidence submitted upon such an application with caution, recognizing that such applications should be narrowed and discouraged rather than extended or encouraged. There must exist a real need or a necessity upon the part of the applicant to be provided for, the court being mindful that it does nothing wantonly or unnecessarily; and, finally, it is not the duty of the court to deal benevolently or charitably with the property of the incompetent."

There are no allegations in the bill before us showing that this incompetent ever contributed anything to the support of the complainants prior to his insanity, that he ever indicated while sane any intention to make such contributions, and no facts are averred which indicate that, if sane, the incompetent would assume the burden of taking care of his brothers and sisters. The bill does not make out a case for the exercise of the delicate power of the chancery court here invoked and conferred by the Act of 1927, as we construe that act. And if we give the act a broader construction, we think it might be subject to the constitutional infirmities heretofore suggested. Such a construction would permit the application of the incompetent's estate to what the court deemed his

moral obligation regardless of his probable wishes in the matter.

The decree of the chancellor dismissing the complainants' bill is affirmed, with costs, but the bill will be dismissed without prejudice.