TATE *v.* TATE *et al.*

(*Knoxville,* September Term, 1949.)

Opinion filed February 10, 1950.

CHAS. S. MAYFIELD, of Cleveland, for complainant-appellant.

CORN & BELL, of Cleveland, for defendant-appellee.

MR. ALBERT WILLIAMS, Special Justice (sitting for MR. JUSTICE GAILOR) delivered the opinion of the Court.

This is an appeal from a decree of the Chancellor, dismissing a bill brought under the provisions of Code Section 9652, to require the guardian of an incompetent to make payments from the ward's personal estate for the care, support and well being of the complainant.

Complainant was the sister of the incompetent and was also his guardian. Therefore, from the caption of the cause, it appeared that complainant, individually, was suing herself as guardian, an anomaly not permitted in law or equity. 39 C. J .S., Guardian and Ward, Section 169; Gibson's Suits in Chancery, Section 46.

Complainant prayed, however, that because of this situation, a guardian *ad litem* be appointed, and this was done. Complainant, then appearing as defendant, answered the bill she had brought and disclaimed any right to represent the ward in the suit. On motion of the guardian *ad litem* the suit was dismissed on the ground that the bill could not be maintained in complainant's individual capacity while she was yet guardian of the ward.

An appropriate assignment of error challenges the propriety of this action.

Complainant concedes that the suit, if regarded as an adversary proceeding, could not be permitted, but insists that by virtue of the Code section invoked, such a proceeding as here brought involves no adversary position on the part of the parties, and that a guardian's participation therein in an individual capacity is not subject to objection.

Complainant takes the position that the matter brought before the court by this suit is merely an inquiry into the ward's estate for the purpose of making an allowance, such as the ward himself would make if competent, and does not require that persons interested therein assume adversary positions. The opinion of this court in the case of *Monds* v. *Dugger*, 176 Tenn. 550, 555, 144 S. W. 2d 761, 763, is relied on to sustain this contention. In that opinion CHIEF JUSTICE GREEN said:

"In *Lewis* v. *Moody, supra,* 149 Tenn. 687, 261 S. W. [673], 674 we said that, 'In England, where the Lord Chancellor acts as the personal delegate of the king, and in some of our states, where such powers are assumed by the chancery court, an allowance out of the income of a lunatic for the benefit of persons whom he is not legally obligated to support is sometimes made. This is done

upon the theory that the court in so acting is doing what the lunatic himself would have done, had he not lost his faculties.'

''Prior to the Act of 1927 this jurisdiction was lacking in our chancery court, but we think it was the intention of the Legislature to confer such jurisdiction by the statute in question. This is to say, the statute gave to the court the old delegated power possessed by the Lord Chancellor with respect to the estate of lunatics—the power of the court to assume the place of the lunatic, to act for the lunatic with respect to his property, and the statute accorded to such action of the court the same effect as would have been given to an act of the incompetent person had he been in his right mind.

''Since in a case of this sort the Court acts in the incompetent's stead, an appropriation of the incompetent's estate is equivalent to a voluntary appropriation of that estate by a person of sound mind. Such an appropriation, as though voluntary, is not a taking of property contrary to the constitutional provisions named.''

■ It is plain that the power of the Chancellor invoked in this case derives solely from the prerogative conferred by Section 9652 of the Code. What does not appear, however, is that the legislature meant to relieve proceedings thereunder from the control of the general rule that a person cannot appear in the dual capacity of guardian and suitor. We find nothing in the statute to indicate a legislative purpose to make it possible for a guardian to remain in his position of trust and initiate proceedings whereby trust funds will be appropriated to his benefit.

■ The policy of the law so to separate the interests of trustees and beneficiaries as to leave no room for casu-

istry and the least possible temptation for divided allegiance, is so general and so salutary that a legislative purpose to depart from it will not be presumed in the absence of positive expression or unambiguous implication.

Sound rules sometimes survive the doctrine that gave rise to their invention. So if it be, as argued by appellant, that the prohibition against a guardian's suit to obtain a part of his ward's estate, originally lay in the law by reason of the fact that such a proceeding was in its nature adversary, it does not now follow that the prohibition is removed because the legislature has opened an avenue to reach a ward's estate by a proceeding that may be considered concordant. It is often said that a rule fails when the reason for it fails, but that means the reason for its present existence, rather than the reason for its original adoption.

■ Conceding that the statute under construction altered the substantive law theretofore prevailing, it does not follow that long respected procedural safeguards were thereby changed or in any manner lessened, even though such procedural safeguards were without analogy in the practice of other jurisdictions having such substantive law as that provided by the statute. The English cases and those of American states where the chancery court had assumed from the beginning the powers which the Tennessee courts were unwilling to accept until they were conferred by statute, are replete with expressions indicating the caution with which the power in question ought to be exercised. *Re Blair* (1836) 1 My. & Cr. 300, 40 Eng. Reprint, 390; *Binney* v. *Rhode Island Hospital Trust Co.*, 1920, 43 R. I. 222, 110 A. 615; Annotation, 59 A. L. R. 660. Our court in *Monds v. Dugger, supra*, said: "The power of a court of chancery to dispose of an in-

competent's estate to persons to whom the incompetent was under no legal obligation always has been regarded as a power to be exercised with great caution. We do not think that our Act of 1927 was in any sense designed to relax the caution properly attendant upon the power conferred." 176 Tenn. 556, 144 S. W. 2d 763.

The Chancellor thought complainant could not remain in her position as guardian and seek benefits under Code Section 9652. We agree. Neither can we say that the Chancellor erred in the taxation of costs. *Ezell* v. *Hake*, 184 Tenn. 319, 198 S. W. 2d 809. Assignments of error raising other questions need not be determined.

The appeal is dismissed.

All concur.