IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 09, 2015 Session

## IN RE THE CONSERVATORSHIP OF CODY LEE WADE

### Appeal from the Chancery Court for Weakley County
### No. 20132     R. Lee Moore, Jr., Judge

_____

### No. W2014-01769-COA-R3-CV – Filed August 5, 2015
_____

The trial court approved Petitioners'/Conservators' petition to establish a Supplemental Needs Trust for their Ward but declined to approve a proposed remainder provision naming two charities as beneficiaries. The trial court ruled that any amounts remaining in the Trust when it terminated would be distributed under the laws of intestate succession. The trial court also excluded evidence offered by Petitioners to demonstrate what they asserted was the Ward's intent. We affirm, as modified.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed as Modified and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which BRANDON O. GIBSON, J. and ROGER A. PAGE, SP. J., joined.

William L. Harbison, Carla L. Lovell, and Lisa K. Helton, Nashville, Tennessee, for the appellants, Ronnie Wade and Reba Wade.

James H. Bradberry, Dresden, Tennessee, for the appellee, Kimberly C. Casner.

### OPINION

This dispute concerns the remainder provision in a proposed "Supplemental Needs Trust" settled in accordance with 42 U.S.C. § 1396p(d)(4)(A). The background facts relevant to our disposition of the issues raised on appeal are not disputed. Cody Lee Wade ("Cody") was born in September 1989 and has lived with his grandparents, Appellants Ronnie and Reba Wade ("the Wades"), since 1999. Appellee Kimberly C.

Casner ("Ms. Casner") is Cody's mother. In June 2007, Cody was seriously injured in an automobile accident shortly before his eighteenth birthday. In August 2007, he was rendered physically and mentally permanently disabled, apparently as the result of improper medical treatment. Ms. Casner and Cody's father, Tony Wade ("Mr. Wade"), consented to the appointment of the Wades as Cody's co-conservators, and the Chancery Court for Weakley County appointed the Wades co-conservators of Cody's person and estate by order entered September 4, 2007.

Friction arose between Ms. Casner and the Wades almost immediately thereafter. Lengthy, acrimonious proceedings ensued, and, in April 2009 and January 2014, the trial court denied Ms. Casner's petitions to modify its 2007 order to appoint her conservator. In its January 2014 order, the trial court noted that a medical malpractice action had been filed on Cody's behalf and instructed the Wades to comply with Tennessee law with respect to any amounts that might be recovered.

The medical malpractice action was settled on January 30, 2014. In April 2014, the Wades filed a petition seeking court approval of a Supplemental Needs Trust ("SNT" or "the Trust") for Cody's benefit. The SNT was to be settled with funds received from the malpractice settlement. In their petition, the Wades asserted that, under Tennessee Code Annotated § 34-1-121, the trial court had broad authority to approve the SNT. The Wades served their petition on Mr. Wade and Ms. Casner as interested parties as Cody's presumptive intestate heirs. Article II, Section 8, of the SNT submitted to the trial court provided that, upon Cody's death, remaining Trust assets would be distributed to pay any taxes and administrative expenses and to reimburse appropriate State agencies for amounts paid on Cody's behalf pursuant to 42 U.S.C. § 1396p(d)(4)(A). Section 8(c) provided that any amounts remaining after reimbursement to the State would be distributed in equal shares to two charities that the Wades had chosen.

Mr. Wade filed a response in support of the Wades' petition. Ms. Casner filed a motion to intervene in the matter and answered the petition on June 5, 2014. In her answer, Ms. Casner acknowledged the trial court's broad authority to direct the management of Cody's assets so as to further Cody's best interests. She asserted, however, that the court did not have the authority to approve distribution of the residue of the Trust other than by intestate succession as set forth in Tennessee Code Annotated § 31-2-104. She prayed the court to dismiss the Wades' petition or to modify it in accordance with section 31-2-104.

At the hearing of the matter on July 10, 2014, the trial court excluded evidence offered by the Wades that purported to demonstrate Cody's desire to "make contributions to society." The trial court approved all provisions of the SNT as proposed by the Wades except Article II, Section 8(c). The court amended the Section to provide that "any distributable funds remaining at the death of Cody Lee Wade shall be distributed to the heirs of Cody Lee Wade according to the Tennessee laws of intestate succession." The

2

trial court also rejected the Wades' contention that the proposed remainder provision should be approved under the doctrine of substituted judgment. This appeal followed.

## Issues Presented

The Wades raise two issues for our review, as we succinctly state them:

1) Whether the trial court erred by holding that, after Cody's death and reimbursement to the State of amounts paid on Cody's behalf, the residue of the SNT must be distributed under the laws of intestate succession pursuant to Tennessee Code Annotated § 31-2-104.

2) Whether the trial court erred by excluding as hearsay an essay Cody wrote in school, prior to his accident and becoming disabled, which was offered to demonstrate "Cody's goal to make contributions to society during his lifetime for which he would be remembered at death."

## Standard of Review

Our discussion of the first issue presented by the Wades for our review requires us to determine whether, under Tennessee Code Annotated § 34-1-121(a), a trial court has the authority to approve the distribution of the residue of a self-settled SNT established by the conservator of a ward other than by intestate succession pursuant to Tennessee Code Annotated § 31-2-104 where 1) the ward has not executed a will and 2) the ward lacks testamentary capacity. This question requires us to construe the scope of the trial court's authority under section 34-1-121. Issues of statutory construction are questions of law. Accordingly, our review is *de novo* with no presumption of correctness afforded to the trial court's decision. *Brundage v. Cumberland Cnty.*, 357 S.W.3d 361, 364 (Tenn. 2011).

If we determine that the trial court has the discretion to approve distribution of the residue of an SNT other than by intestate succession under the circumstances present here, then we must determine whether the trial court abused its discretion in this case. An abuse of discretion occurs when the trial court applies an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011) (citations omitted). Under the abuse of discretion standard of review, the appellate court cannot substitute its judgment for that of the trial court. *Id.* Rather, we will presume the trial court's discretionary decision to be correct and will view the evidence in a light most favorable to its decision. *Id.* A trial court's decision to admit or exclude evidence also is reviewed under the abuse of discretion standard of review. *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d 121, 131 (Tenn. 2004).

3

**Discussion**

The first issue presented by this appeal is one of first impression in Tennessee, and it appears that there is no case-law addressing SNTs, other than peripherally, in this State. Accordingly, we begin our discussion with a brief review of the nature of the Supplemental Needs Trust as an estate management device for disabled individuals. We next turn to the trial court's broad discretion under Tennessee Code Annotated § 34-1-121 and the doctrine of substituted judgment, and to whether the trial court erred by disapproving the remainder provision in the present case.

**Supplemental Needs Trusts**

In 1993, Congress revised the eligibility requirements of Medicaid in reaction to the use of financial instruments that were developed to circumvent the Medicaid Qualifying Trust rules. Shawn Patrick Regan, *Medicaid Estate Planning: Congress' Ersatz Solution for Long-Term Health Care*, 44 Cath. U. L. Rev. 1217, 1235 (1995). The Omnibus Budget Reconciliation Act of 1993 ("OBRA '93") broadened the definition of "assets" for the purpose of qualifying for Medicaid, "mak[ing] it substantially more difficult for individuals to qualify for Medicaid by divesting themselves of their income through outright inter-vivos transfers and through the establishment of trusts or similar arrangements." *Id*. Under OBRA '93, trusts established with the assets of a Medicaid applicant generally "will be counted as an available asset for the purpose of determining Medicaid eligibility." *Id*. at 1240 (citing John J. Regan, *Tax, Estate & Financial Planning for the Elderly* § 10.13[1], at 10-83 (1994)). However, certain trusts are specifically exempt from consideration and will not be considered for the purposes of eligibility "even when they distribute or receive assets that would otherwise be considered available." *Id*. at 1243 (citing 42 U.S.C. § 1396p(d)(4) (Supp. V 1993)).

> 42 U.S.C. § 1396p(d)(4)(A) provides an exemption for:
> A trust containing the assets of an individual under age 65 who is disabled (as defined in section 1382c(a)(3) of this title) and which is established for the benefit of such individual by a parent, grandparent, legal guardian of the individual, or a court if the State will receive all amounts remaining in the trust upon the death of such individual up to an amount equal to the total medical assistance paid on behalf of the individual under a State plan under this subchapter.[1]

---

[1] 42 U.S.C. § 1382c(a)(3) provides:

> (3)(A) Except as provided in subparagraph (C), an individual shall be considered to be disabled for purposes of this subchapter if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.

A trust established under the exemption must be irrevocable and may be established only by "a parent, grandparent, legal guardian of the [disabled] individual, or a court[.]" 42 U.S.C. § 1396p(d)(4)(A). Damages or settlement amounts acquired from litigation are often used to establish the trust, but the exemption is not limited to such assets. Regan, *Medicaid Estate Planning,* 44 Cath. U. L. Rev. at 1244 (footnote omitted).

Trusts established under the exemption must supplement rather than supplant Medicaid benefits. *Id.* at 1243-44 (footnote omitted). Thus, trust assets may be expended by the trustee "to pay for quality of life goods and services for the disabled beneficiary." Abraham J. Perlstein, *Comprehensive Future Care Planning for Disabled Beneficiaries*, 27 ESTPLN 358, 365 (Oct. 2000). The trust must contain an express "payback" provision stating that any amounts remaining in the trust after the death of the applicant/beneficiary will be used to reimburse Medicaid/the State for expenditures made on his/her behalf. *Id.*; Regan, *Medicaid Estate Planning,* 44 Cath. U. L. Rev. at 1244.

### Tennessee Code Annotated §§ 31-2-104 and 34-1-121

In their brief, the Wades assert that, under Tennessee Code Annotated § 34-1-121(a), the trial court had broad authority to approve the remainder provision contained in their proposed SNT. They further assert that the trial court had the authority to approve the provision under the doctrine of substituted judgment. The Wades assert that designating charities as the beneficiaries of any amounts remaining in the Trust after Cody's death and reimbursement to the State is in Cody's best interests "because such

---

(B) For purposes of subparagraph (A), an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

(C)(i) An individual under the age of 18 shall be considered disabled for the purposes of this subchapter if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

(ii) Notwithstanding clause (i), no individual under the age of 18 who engages in substantial gainful activity (determined in accordance with regulations prescribed pursuant to subparagraph (E)) may be considered to be disabled.

designation would reduce the amount of litigation during Cody's lifetime by self-interested beneficiaries."

Ms. Casner, on the other hand, asserts that, the trial court's broad authority notwithstanding, the disposition of any funds that might remain in the SNT after Cody's death does not affect the care and treatment of Cody during his lifetime. She further asserts that the authority provided to the trial court by section 34-1-121(a) does not "trump[]" the intestacy statutes and that the Wades' reliance on the doctrine of substituted judgment is misplaced. With these arguments in mind, we turn to the statutory provisions.

It is well-settled that our duty when construing a statute is to ascertain and effectuate the intent and purpose of the General Assembly, neither broadening the statute beyond its intended scope nor unduly restricting it. *Thurmond v. Mid–Cumberland Infectious Disease Consultants, PLC*, 433 S.W.3d 512, 517 (Tenn. 2014); *Comm'r of Powell–Clinch Util. Dist. v. Util. Mgmt. Review Bd.*, 427 S.W.3d 375, 384 (Tenn. Ct. App. 2013) (citation omitted). We interpret a statutory section reasonably in light of the context of the entire statute, construing it according to the natural, ordinary meaning of the language chosen by the legislature and in a "manner which avoids statutory conflict and provides for harmonious operation of the laws." *Baker v. State*, 417 S.W.3d 428, 433 (Tenn. 2013).

We begin our discussion by noting that it is undisputed that Cody did not execute a will before becoming disabled, that he has never been married, and that he has no children. It also is undisputed that the SNT proposed in this case is a self-settled, irrevocable trust – i.e., the trust is being created with Cody's assets – and that Cody lacks testamentary capacity.

Although Tennessee does not have a statute specifically enabling the creation of an SNT as provided by 42 U.S.C. § 1396p(d)(4)(A),[2] section 106 of Tennessee's Medical Assistance Act provides, in relevant part:

> (b) In determining the eligibility of an individual for benefits under this chapter, resources that have been previously owned and transferred by the individual, or such individual's spouse, shall be treated in a manner consistent with Title XIX of the Social Security Act, compiled in 42 U.S.C. §1396 et seq.

Tenn. Code Ann. § 71-5-106 (2012). Additionally, Chapter 1 of Title 34, which governs guardianships and conservatorships in general, provides, in relevant part:

---

[2] See, e.g., N.Y. Est. Powers & Trusts Law § 7-1.12 (McKinney).

> (a) The court has broad discretion to require additional actions not specified in this chapter, and chapters 2 and 3 of this title as the court deems in the best interests of the minor or person with a disability and the property of the minor or the person with a disability.

Tennessee Code Annotated § 34-1-121(a) (2007). Thus, we agree with the Wades that the trial court is afforded broad discretion to approve the provisions of a Supplemental Needs Trust as defined by 42 U.S.C. § 1396p(d)(4)(A).

In their brief, the Wades assert that the trial court's discretion extends so far as to approve distribution of the remainder of Cody's Trust assets other than by intestate succession notwithstanding that Cody lacks testamentary capacity. They assert, "[p]ermitting the designation of charitable remainder beneficiaries in Cody's Trust is exactly the type of action permitted" by the section. The Wades cite no statute or case-law to support their argument but rely on *Gordon v. Georgetown Univ.*, No. 02A01-9709-CH-00218, 1998 WL 242452 (Tenn. Ct. App. May 15, 1998) in support of the proposition that "application of the intestacy statutes is generally disfavored in Tennessee, if it can be avoided."

We must disagree with the Wades that, in the absence of a will and testamentary capacity on the part of the ward/conservatee, section 34-1-121(a) evidences legislative intent to permit the trial court to approve a remainder provision in a self-settled SNT in contravention of the law of intestate succession We must also disagree that *Gordon*, or *Ledbetter v. Ledbetter*, 216 S.W.2d 718 (Tenn. 1949), the Tennessee Supreme Court case cited by the *Gordon* court, stands for such a proposition. Rather, the *Gordon* court referred to "the general rule in this state disfavoring intestacy *where one has undertaken to make a will.*" *Gordon v. Georgetown Univ.*, No. 02A01-9709-CH-00218, 1998 WL 242452, at *4 (Tenn. Ct. App. May 15, 1998) (emphasis added). Quoting *Ledbetter* for the law's presumption "that one who undertakes to make a will does not intend to die intestate[,]" the *Gordon* court noted that, upon consideration of a decedent's will, "'the courts will place such a construction upon the instrument as to embrace all the testator's property, if the words used, by any fair interpretation or allowable implication will embrace it.'" *Id.* (quoting *Ledbetter v. Ledbetter*, 216 S.W.2d 718, 720 (Tenn. 1949) (quoting Pritchard on Wills, § 386)). In this case, the Wades are not seeking to effectuate the provisions of Cody's will but to change the character of his property and circumvent the laws of intestate succession through the remainder provision of an irrevocable SNT.

Title 31, Chapter 2, sets forth Tennessee's law of intestate succession. The chapter provides, in relevant part:

> When any person dies intestate, after the payment of debts and charges against the estate, the deceased's property passes to the deceased's heirs as

7

prescribed in the following sections of this chapter. Any part of the estate of a decedent not effectively disposed of by the deceased's will passes to the deceased's heirs in the same manner.

Tenn. Code Ann. § 31-2-101 (2007). It further provides:

(a) The intestate share of the surviving spouse is:

(1) If there is no surviving issue of the decedent, the entire intestate estate; or

(2) If there are surviving issue of the decedent, either one-third ( ⅓ ) or a child's share of the entire intestate estate, whichever is greater.

(b) The part of the intestate estate not passing to the surviving spouse under subsection (a) or the entire intestate estate if there is no surviving spouse, passes as follows:

(1) To the issue of the decedent; if they are all of the same degree of kinship to the decedent they take equally, but if of unequal degree, then those of more remote degree take by representation;

(2) If there is no surviving issue, to the decedent's parent or parents equally;

(3) If there is no surviving issue or parent, to the brothers and sisters and the issue of each deceased brother and sister by representation; if there is no surviving brother or sister, the issue of brothers and sisters take by representation; or

(4) If there is no surviving issue, parent, or issue of a parent, but the decedent is survived by one or more grandparents or issue of grandparents, half of the estate passes to the paternal grandparents if both survive, or to the surviving paternal grandparent or to the issue of the paternal grandparents if both are deceased, the issue taking equally if they are all of the same degree of kinship to the decedent, but if of unequal degree those of more remote degree take by representation; and the other half passes to the maternal relatives in the same manner; but if there is no surviving grandparent or issue of grandparent on either the paternal or maternal side, the entire estate passes to the relatives on the other side in the same manner as the half.

Tenn. Code Ann. § 31-2-104 (2007). Section 34-1-121 empowers the court to require a conservator to undertake actions that are in the disabled person's best interests. In the absence of a will or testamentary capacity, it does not authorize the court to direct distribution of a decedent's estate other than by intestate succession.

## Doctrine of Substituted Judgment

We must also disagree with the Wades that the trial court erred by disapproving the proposed remainder provision under the doctrine of substituted judgment. In their brief, the Wades rely on comment f to the Restatement (Third) of Trusts § 11 in support of their argument. As the Wades assert, the Restatement states, in relevant part:

> Under some circumstances an agent under a durable power of attorney or the legal representative of a property owner who is under disability may create a trust on behalf of the property owner.

Restatement (Third) of Trusts § 11(5) (2003). The comment to the section provides, in

relevant part:

> The legal representative . . . may also make charitable and other inter-vivos gifts of the property of a minor or incompetent person, including gift-transfers in trust, but only to the extent authorized by the appropriate court.

*Id*. cmt. f. Although the comment provides examples of some circumstances under which a court may permit a legal representative to "act as appropriate to the settlor's estate planning objectives," it conditions such action on "what is proper in light of the policies underlying any applicable prohibition against the making of wills by such fiduciaries."

The Wades cite *Monds v. Dugger*, 144 S.W.2d 761 (Tenn. 1940), and *Tate v. Tate*, 227 S.W.2d 50 (Tenn. 1950), in support of the proposition that courts have the authority to dispose of a mentally disabled person's estate to persons to whom the disabled person is under no legal obligation. In *Monds*, the elderly, needy siblings and presumptive heirs of a mentally disabled, unmarried man who received funds from a war risk insurance policy and from bonds known as "the soldier's bonus" petitioned the court for the monthly sum of $25 to be set aside for their support and charged against their distributive estate. *Monds v. Dugger*, 144 S.W.2d 761, 761-62 (Tenn. 1940). Quoting what was then codified at § 9652 of the Tennessee Code, the *Monds* court noted the courts' discretionary authority to:

> authorize and direct the legal guardian of such incompetent to make provision or payment from the personal estate of such incompetent for the care, support and well being of the children, wife or husband, father and/or

9

mother, brothers and sisters, or the child or children of any deceased brother, or sister, preference being given by the court to the dependents of the incompetent in the order here in set out; provided, that in cases other than that of the child or children or wife of the incompetent, it must be shown by competent and satisfactory proof that the person of any other class mentioned, making application for an allowance, was dependent on the said incompetent for support and maintenance prior to the time the said incompetent became mentally disabled, or was, at the time of the application for such provision or payment, actually dependent, and has a legal or moral right to claim support from the incompetent were he in the full possession of his faculties; and provided, further, that in making the award in favor of such dependent or dependents the court shall take into consideration the situation, amount and value of the personal estate of the incompetent at the time of making the award, and any probable increase or decrease thereof, in the future; the age and condition, physical, financial or otherwise, of the child, wife or husband, father or mother, brother or sister, or other person claiming dependency, and see to it that an ample portion of the incompetent's estate, personal or otherwise, shall remain intact for the support, maintenance, care and comfort of such incompetent.

*Id*. at 762-63. Noting that the power of a chancery court "to dispose of an incompetent's estate to persons to whom the incompetent was under no legal obligation always has been regarded as a power to be exercised with great caution[,]" the *Monds* court affirmed the trial court's judgment denying the petition. *Id*. at 764.

In *Tate*, the court acknowledged section 9652 but ruled that a guardian or conservator cannot maintain an action "to obtain a part of his ward's estate," notwithstanding the section. *Tate v. Tate*, 227 S.W.2d 50, 52 (Tenn. 1950). The *Tate* court additionally noted that section 9652 as adopted in 1927 "altered the substantive law theretofore prevailing[.]" The court held that "it [did] not follow that long respected procedural safeguards were thereby changed or in any manner lessened[.]" *Id*. The statutes have long been amended, and neither *Monds* nor *Tate* is useful to our analysis in this case.

The doctrine of substituted judgment originated "in the early nineteenth-century law of lunacy" and currently is most frequently used in the context of informed consent. Louise Harmon, *Falling Off the Vine: Legal Fictions and the Doctrine of Substituted Judgment*, 100 Yale L.J. 1 (1990). Its contemporary legal definition is:

A principle that allows a surrogate decision-maker to attempt to establish, with as much accuracy as possible, what healthcare decision an incompetent patient would make if he or she were competent to do so.

*Black's Law Dictionary* 1658 (10th ed. 2014). The asserted judgment of the mentally disabled person must be established by clear and convincing evidence. *Id.* Historically, the "legal fiction" of the doctrine of substituted judgment has been applied with mixed motivations. The doctrine's mixed history and application is beyond the scope of our discussion here, but as Ms. Harmon observes, the "legal fiction may be benign in one context, and dangerous or brutal in another." Harmon, *Falling Off the Vine: Legal Fictions and the Doctrine of Substituted Judgment*, 100 Yale L.J. at 61.

The Wades reference no Tennessee case-law adopting or applying the doctrine of substituted judgment to permit a conservator to make what effectively is a testamentary decision on their ward's behalf, and we find none. On the contrary, the courts of this State have adhered to the proposition that "[b]efore the character of the interest in property held by a [conservatee] can be changed, it must be made manifest that it is necessary to protect and promote his interest." *Grahl v. Davis*, 971 S.W.2d 373, 377 (Tenn. 1998) (quoting *Folts v. Jones*, 132 S.W.2d 205, 208 (Tenn. 1939)). Additionally, the courts will preserve the interests of succession as far as possible without sacrificing the welfare of the ward/conservatee. *Id.* (quoting *Folts*, 132 S.W.2d at 208). "A conservator is not the alter ego of the conservatee . . . and has no authority to exercise an elective right or power of the conservatee." *Id.* (citing *Folts*, 132 S.W.2d at 207). Thus, for example, a conservator cannot change the named beneficiary of a ward/conservatee's life insurance policy, "thereby destroy[ing] the beneficiary's contingent interest," without permission of the court, which will grant such permission only if it is in the ward/conservatee's best interests. *Folts*, 132 S.W.2d at 208.

We must agree with Ms. Casner that the distribution of whatever assets remain in the SNT after Cody's death and reimbursement to the State for amounts expended on Cody's behalf has no impact on Cody's best interest while he is alive. Indeed, the best interests of the beneficiary of an SNT are furthered by avoiding any conflict of interest between the Trustee and any potential remainder beneficiaries. Hon. Albert J. Emanuelli, *Supplemental Needs Trusts: The Role of the Surrogate Court*, 25 Westchester B.J. 147, 153 (1998). Thus, any amounts remaining in a self-settled SNT established for a mentally disabled beneficiary should be payable to the beneficiary's estate after his/her death, termination of the SNT, and reimbursement to the State for amounts paid on the beneficiary's behalf. *Id.*

## Holding

In light of the foregoing, we affirm the judgment of the trial court disapproving the remainder provision of the SNT proposed by the Wades. We modify the judgment to provide that any amount remaining in the SNT after Cody's death and repayment to the State shall be distributed to Cody's estate. Remaining issues are pretermitted as unnecessary in light of this holding. Costs on appeal are taxed to the Appellants, Ronnie Wade and Reba Wade, and their surety, for which execution may issue if necessary. This

11

matter is remanded to the trial court for further proceedings as may be necessary consistent with this Opinion.

_____
ARNOLD B. GOLDIN, JUDGE